670 P.2d 42

Francisco R. GOMEZ,
Claimant-respondent,

v.

RANGEN'S INC., Employer, and Argonaut Northwest Insurance Company, Surety, Defendants-appellants.

No. 14248.

Supreme Court of Idaho.

May 16, 1983.

Rehearing Denied Oct. 4, 1983.

John W. Barrett, of Moffatt, Thomas, Barrett & Blanton, Boise, for defendants-appellants.

Emil F. Pike, of Pike & Berry, Twin Falls, for claimant-respondent.

BAKES, Justice.

On June 7, 1979, Francisco Gomez, the claimant respondent, received an injury to his back in the course and scope of his employment with Rangen's, Inc. At the time of the accident, Rangen's, Inc., was insured by Argonaut Northwest Insurance Co., the defendant appellant in this action. Dr. Vern H. Anderson of Buhl initially examined claimant, found him to be disabled from work and referred him to Dr. Robert J. Porter, an orthopedic surgeon in Twin Falls, Idaho. Dr. Porter examined claimant on June 27, 1979, and periodically over the course of the next ten months and prescribed treatment, including medication, physical therapy, and injections.

Claimant's condition did not significantly change or improve during the course of treatment. Dr. Porter was unable to find any objective cause for claimant's complaint, but nevertheless rated claimant's physical injury as a permanent partial physical impairment equal to 10% of the whole man, based solely upon claimant's subjective complaints of pain in his back.

Claimant filed a claim for workmen's compensation benefits on June 30, 1979. At the hearing before the Industrial Commission on August 5, 1980, various witnesses testified, and the parties stipulated to the admission of certain medical reports. A counselor for the rehabilitation division of the Industrial Commission, Mr. Jim Spooner, testified concerning his efforts to obtain employment for claimant. He testified that in early 1980 he had contacted Rangen's, Inc., which made an offer to re-employ claimant, and that Dr. Porter had given claimant a work release to perform the duties described in Rangen's offer of employment. The job consisted of custodial duties and minor maintenance, and Mr.

Spooner stated that other "large operations" in the area would have had similar employment opportunities that were compatible with claimant's physical restrictions. Mr. Spooner further testified that he had discussed the job offer and the nature of the work with claimant, who refused the job offer, stating that "he was too disabled to do that type of work."

At the conclusion of the hearing, Rangen's attorney made a motion to amend the pleadings to conform to the evidence, asserting as a defense that claimant had refused suitable work and that he therefore had forfeited his right to workmen's compensation benefits. Claimant's counsel made no objection to the motion. The commission made no ruling upon the motion at that time.

Pursuant to stipulation, a medical panel in Boise, Idaho, examined the claimant in July, 1980, and reported its findings to the Industrial Commission. The panel found no objective evidence indicating the source of claimant's pain and gave no rating of permanent partial physical impairment. The psychiatrist on the panel, however, concluded that claimant suffered a psycho-neurotic depressive reaction from the injury and the panel gave him a rating of 5% impairment of the whole man on that basis.

After all medical reports and the parties' briefs had been submitted, the Industrial Commission issued its decision in its Findings of Fact, Conclusions of Law, and Award, filed on April 2, 1981. The commission found, among other things, that Rangen had offered claimant a job that was compatible with the work restrictions on heavy lifting described by Dr. Porter; that the job was considered light work consisting of custodial duties and minor maintenance, at a salary that was just a few cents an hour less than he was previously receiving; that claimant was able to perform the job of custodian offered to him by Rangen's, or other similarly light work; and that claimant was not totally and permanently disabled.

In determining the extent of claimant's disability the commission accepted Dr. Por-

ter's physical and partial permanent impairment rating of 10% of the whole man, and the 5% impairment rating resulting from the psycho-neurotic depressive reaction. The commission also found that non-medical factors, such as age, limited education and work experience, constituted an additional impairment of 10% of the whole man.

The commission awarded claimant total temporary disability benefits for the period from June 9, 1979, to April 14, 1980, with credit for the amounts previously paid. In addition to the total temporary benefits awarded, the commission concluded that claimant suffered a permanent partial disability of 25%, as compared to the whole man, and awarded him income benefits at the statutory rate for permanent partial disability for a period of 125 weeks. Rangen appeals from the award. For the reasons set forth below, we reverse and remand the cause to the Industrial Commission.

The findings of fact entered by the Industrial Commission that specifically relate to claimant's impairment and disability and his capacity to perform available work, including the work offered to him by Rangen's, Inc., are as follows:

"V

"Dr. Porter has rated the claimant's permanent partial impairment as 10% of a whole man, due to unrelenting back pain aggravated by activity. The claimant is unable to return to any type of heavy lifting, in the opinion of Dr. Porter. The rating is based upon subjective complaints by the claimant. The claimant thereafter received a job offer from Rangen's, which was compatible with the claimant's work restrictions. The job was evaluated by a rehabilitation counselor of the Industrial Commission. The work was as a custodian, doing clean up and minor maintenance. The job is considered to be light work. The pay was only a few cents an hour less than the job the claimant was doing at the time of the injury. The job description was reviewed

and approved by Dr. Porter and the job is within the restrictions placed on the claimant by Dr. Porter. However, the claimant declined to even attempt to perform the job. The claimant has not attempted to obtain or try any employment and has not worked since his accident. The Commission finds that the claimant's condition became stable and fixed as of April 15, 1980, the date he was last examined by Dr. Porter.

## "VI

"In July 1980, the claimant was examined by a medical panel in Boise consisting of a neurologist, an internist, a psychiatrist, and an orthopedist. The panel found that the claimant had many subjective complaints of pain for which there was no objective evidence during the physical examination. The panel found that the claimant had no evidence of significant physical limitation, and therefore gave him no rating for permanent partial impairment from a physical standpoint. The psychiatrist member of the panel believed that the claimant had a mild degree of depression, as a result of the injury, but that he did not need therapy for this problem. He estimated that the claimant had a 5% impairment of the whole man, on the basis of a psychoneurotic depressive reaction as a result of the claimant's injury. The opinion of the panel, therefore, was that the claimant had a 5% whole man impairment on the basis of psychoneurotic reaction.

## "VII

"The Commission concludes that the claimant's impairment attributable to physical reasons can best be evaluated by Dr. Porter, who was the claimant's treating physician and saw the claimant a number of times over a period of months. The Commission therefore accepts the impairment rating of Dr. Porter and finds that the claimant has a permanent physical impairment of 10% of the whole man from a physical standpoint. The Commission also finds that the claimant has

an additional 5% of the whole man physical impairment on the basis of a psychoneurotic depressive reaction.

## "VIII

"A counselor with the Idaho Department of Employment testified on behalf of the claimant. He did not attempt to place the claimant in employment because the claimant expressed the opinion, to the counselor, that he was not able to work at all. It was the counselor's opinion that the claimant's age, limited education, and work experience significantly reduce the claimant's ability to obtain and hold a job in the Twin Falls area. The Commission finds that the non-medical factors attributable to the claimant constitute a 10% of the whole man impairment, in addition to the physical and mental impairments established by the medical doctors. The Commission finds that the claimant is not totally disabled as he contends. The claimant is able to perform the job of custodian offered him by Rangen's, or other similar light work. The Commission further finds that the claimant's physical impairment, as determined by Dr. Porter, the claimant's mental impairment, as evaluated by the psychiatrist, and the claimant's disability attributable to non-medical factors, in summation, constitute a total of permanent partial disability of 25% of the whole man, which is attributable to the effects of the claimant's injury of June 7, 1979."

Appellant relies on I.C. § 72–403 in support of its argument that, by refusing to accept the custodial position offered to him by Rangen's, Inc., a position that the Industrial Commission specifically found claimant capable of performing, claimant forfeited his right to recover any workman's compensation benefits. I.C. § 72–403 provides:

"72–403. PENALTY FOR MALINGERING—DENIAL OF COMPENSATION.— If a partially disabled employee refuses to seek suitable work or refuses or neglects to work after suitable work is offered to, procured by or secured for him,

he shall not be entitled to any compensation."

The legislature enacted I.C. § 72–403 in 1971. *See* 1971 Idaho Sess. Laws ch. 124, § 3. Neither party, however, was able to cite, nor does our research disclose, any reported case in which I.C. § 72–403 has been interpreted or applied. The Industrial Commission failed to address the applicability of I.C. § 72–403 in its findings of fact, conclusions of law, and award. In its motion for reconsideration and supporting brief, appellant urged that I.C. § 72–403 precluded respondent's recovery of any worker's compensation benefits, and respondent argued to the contrary in his responding memorandum. The Industrial Commission summarily denied appellant's motion for reconsideration without addressing the applicability of I.C. § 72–403 to respondent's claim for benefits. Having been fully confronted with the issue of whether I.C. § 72–403 applied to bar claimant's recovery of benefits, "it would appear that the Commission failed to fully consider its obligation to make specific findings and conclusions in this regard, and thus, this case must be remanded to the Commission to afford it the opportunity to again examine its position . . . ." *Sines v. Appel,* 103 Idaho 9, 13, 644 P.2d 331, 335 (1982) (action remanded for determination of "manifest injustice" as a ground for reopening and review of an order of the commission); *see Clayton v. Hercules Mining Co.,* 63 Idaho 301, 119 P.2d 890 (1941); *Dyre v. Kloepfer,* 64 Idaho 612, 134 P.2d 610 (1943).

Since the commission should have passed on this issue before it is considered by this Court, the order of the Industrial Commission is reversed and the cause remanded for findings of fact and conclusions of law on the issue of whether I.C. § 72–403 bars respondent's claim to benefits.

Costs to appellant.

DONALDSON, C.J., and SHEPARD and HUNTLEY, JJ., concur.

HUNTLEY, Justice, specially concurring.

I concur in the reversal and remand for the reasons stated in the majority opinion. However, since the record before us is complete for framing the ultimate legal issue, I would take it one step further and offer guidance to the Commission in performance of its task of interpreting, and reconciling the applicable section of the Workmen's Compensation statutes.

It would make no sense to rule that a worker forfeits permanent partial disability entitlement (say for the loss of an arm or a leg or other disability) because of refusal to work for whatever reason—rather, a reading of the code as a whole drives the conclusion that the legislature intended I.C. § 72–403 to apply only to temporary total benefits.

BISTLINE, Justice, dissenting.

It will not surprise the trial bar that the author of today's majority opinion was the sole lamenting dissenter in *Sines v. Appel,* 103 Idaho 9, 644 P.2d 331 (1982), but the bar may well be startled to see three other members so readily joining the opinion. It may neither surprise nor startle anyone that the majority are unmindful of our recent *Houser* case [1] where this same Supreme Court experienced no trouble in simply *assuming* that the same Commission properly applied a statute where the record was absolutely devoid of any indication that it had been considered—which was painstakingly pointed out in my own opinion in that case. The record in this case is not similarly devoid, however, and the majority's opinion is somewhat lacking in accuracy wherein it declares to the unsuspecting reading public that the Commission summarily denied Argonaut's motion for reconsideration. Quite the contrary is the truth of the matter. In my experiences I have encountered summary dispositions, and in my present position I have observed many. A two week consideration of a motion before ruling upon it is not, in my book at least, a summary disposition. More than

1. *Houser v. Southern Idaho Pipe & Steel, Inc.,* 103 Idaho 441, 649 P.2d 1197 (1982). *See* dissent, 103 Idaho at 449, 649 P.2d at 1207 (right column).

that, however, I have always understood that where a clear-cut issue of *law* can only be decided one way or the other, the determination will necessarily be for one party or the other. Fifty times a year, give or take a few, this Court receives petitions for rehearing from our own decisions and from decisions of the Court of Appeals. Ninety to ninety-five percent of those petitions are ruled upon by a single word—"Denied." In some instances the single word is "Granted" —and in no instance does the Court deign to explain its reasoning—often in the face of exceptionally well written and compelling petitions. Those who want to fathom the Court's rationale decendi, if there is one, must glean it from reading the petition and measuring the value of the Court's opinion against the content of the petition. Such is often true where the Court on appeal reviews an order sustaining a motion to dismiss, and order granting or denying a motion for a new trial, and an order granting a summary judgment.

Today the majority tosses into the wheels of the administration a monkey wrench— one which reverses the process, notwithstanding that the only issue is one of law, and which this Court will ultimately decide one day. Why not now? See my separate opinions in the recent cases of *Comegys* [2] and *Grant*.[3] Is it necessary that this Court know the reasoning processes by which the Commission concluded that Argonaut's motion was not well taken? I think not. Not for one moment is it to be expected that the five legal minds on the Supreme Court will subvert their own judgment of the law, as they think the law should be, to a commission of three, only one of whom is certified as being learned in the law—not forgetting the other two have nothing to guide them but wisdom, experience, and integrity.

The issue presented to the Commission was indeed novel—so novel in fact that so far as is known, no other surety or employer has heretofore ever advanced it. It is not a difficult issue. Even the majority opinion, as presently written, acknowledges that if Mr. Gomez continued in employment that it would have to be at a job, such as was offered which "was compatible with the work restrictions on heavy lifting described by Dr. Porter; that the job was considered light work consisting of custodial duties and minor maintenance"—which in ordinary parlance translates into janitor, watchman, or both. The same thing would as readily be so if Gomez had been fitted with two artificial hip joints, or had he lost three fingers from one hand, or perhaps suffered a frozen shoulder or elbow joint. *The Commission here concluded that Gomez by reason of an industrial accident in covered employment had a 25% impairment.* That impairment is not challenged on this appeal. It is sneered at by Argonaut, and lampooned in the majority opinion, but it has not been challenged. Notwithstanding that the only issue on the appeal is Argonaut's claim that Gomez has forfeited away the award which the Commission—not as a gratuity or as a beneficence—in its application of the legislature's law says is due a working man who in his employment is by industrial injury deprived of some of his bodily members or bodily functions. Make no mistake about it. That is what is involved here. What is not involved is the weekly compensation a man is entitled to following injury up until the time he can return to work, fully, or part-time. To urge that a man who either believes he can no longer work or even cares to no longer work gives up, by way of forfeiture, the outright loss of a leg, or the full use of a sturdy back which has well served him for approximately sixty years, is such a monstrous proposition that little wonder it has not been heretofore urged. If, while drawing temporary benefits following injury, a worker turns down suitable employment, such is a different matter, and I would be

---

**2.** *Comegys v. Idaho Air National Guard,* 83 I.S.C.R. 261 (S.Ct. No. 14048, 1983 Opinion No. 25 filed February 15, 1983) (petition for rehearing pending).

**3.** *Grant v. Brownfield's Orthopedic & Prosthetic,* 83 I.S.C.R. 295 (S.Ct. No. 13780, 1983 Opinion No. 28 filed February 17, 1983) (petition for rehearing granted; rehearing on oral argument pending).

among the first to say, "No work, no pay." I will not be among the last to say that a working man can be lawfully held to have forfeited away that little which the law says shall be his when on the job he loses a hand or an eye, or from back injury has "unrelenting back pain aggravated by activity." Commissions Finding of Fact V, based on accepted testimony of attending physician. I will not be the last because I will *never* succumb to such an absurdity, perhaps to some extent because of growing up steeped in notions of Idaho opinions which have always held forfeitures in disfavor. Here, the proposition before the Court being that we should forfeit away that which the law (through the Commission) gives Mr. Gomez for his bodily impairment and resultant disability, I very much question the constitutionality of the construction of a statute in that manner. We ought not forget that the working man, ere the advent of the Workmen's Compensation Act, was not disabled from suing his employer for his injuries suffered on the job. Some suits he would win; more he would lose; but ever he had the right to make the try, even though the odds against him were fearful. An enlightened legislature took that right away, and for his disability gave him the "sure and certain relief" which has been the promise of the law. I little doubt that those who would now forfeit away the gold which he is paid for a lost arm, an eye, or a bad back, would also claim the right to have forfeited away a personal injury damage award recovered before the Act by a man who believed he could no longer do gainful work, or, perhaps did not care to do so, especially when the offer came from the very employer against whom he was claiming, and there was no reason to believe other than that the job of custodian might be abolished once settlement was made. Under the circumstances of this case, many may see the majority opinion as being a bit on the gullible side. Even so, no matter which way the ball may eventually bounce, there is no reason to procrastinate, and no logic in demanding of the Commission that it detail its reasoning in finding Argonaut's motion without merit. If the majority are

of a disposition to wreak a forfeiture upon Mr. Gomez, it is suspected that he would prefer now as well as later. Equally, there is no reason for a majority opinion which as I read it seems to intimate that the Commission should not have found impairment and awarded disability on the subjective complaints the claimant made to his doctor, and his therapist, and a rehabilitation worker all of whom treated claimant for the physical problems he had. The majority's portrayal of the nature of the evidence which satisfied the Commission had nothing whatever to do with the single issue presented on appeal. That single issue was equally well presented to the Commission by both Argonaut and Mr. Gomez—so well indeed that it is difficult to comprehend the Commission's denial of Argonaut's motion as being said to have been summarily rendered.

The brief which Argonaut submitted to the Commission went directly to the heart of its contention, and I deem it appropriate to lay out salient portions of it in order to dispel any thought that the Commission ruled summarily, off the top of its head, and without hearing and considering the arguments and authority of counsel for the parties. Prefatorily, however, I emphasize that the Commission did not award any temporary benefits after the time that Dr. Porter certified that his treatment of Mr. Gomez was concluded and he could return to light work. At stake here is Argonaut's contention that Mr. Gomez should be stripped of the award for his permanent disability. So positioned, I extract the salient passages from Argonaut's brief laid before the Commission:

"Defendants submit that the Commission has totally failed to apply or consider the provisions of Section 72–403, Idaho Code. That section specifically provides 'if a partially disabled employee refuses to seek suitable work or refuses ... to work after suitable work is offered to ... or secured for him, he shall not be entitled to any compensation.'

"The foregoing statute is unambiguous. We have no particular argument with the

Commission's findings insofar as it applies to this issue....

....

"... Simply stated, we are confronted now with a case where a claimant has no objective medical findings (Dr. Porter testified that if he were to rate him on objective medical findings, the rating would be zero). (Dr. Porter's deposition, page 12, line 20–25) The Commission acknowledges by its findings that the claimant is able to perform janitorial or custodial work of the nature offered by the employer and is able to perform similar type work to that offered him. That the doctor released the claimant for that type of work, the work having been totally evaluated by what we assumed to be a competent and qualified Rehabilitation Counselor (one employed by the Industrial Commission). The claimant not only had failed to establish that he could not subjectively perform the work, however, it is found without conflict, that the claimant won't even attempt it.

"On the basis of the foregoing the Commission rules that the claimant is entitled to some $13,500.

"Section 72–403, Idaho Code, specifically provides that where a partially disabled employee refuses to work after suitable work is offered to him shall '*not be entitled to any compensation.*'

"In this case he was released for the work, the work was obtained for him, the employer offered it to him and he refused it. The decision in this case clearly should be in conformance with the application of the statute cited. The claimant should 'not be entitled to any compensation.' There is simply no justification in failing to apply this statutory provision.

### SUMMARY

"Since the Supreme Court of the State of Idaho has adopted the 'odd lot doctrine' it has become fashionable for employees with back sprains and no objective medical findings to seek an impairment rating based upon subjective complaints. The next step is to then establish through a counselor, taking into consideration the subjective complaints, that the claimant now has a 'disability rating' of something in the neighborhood of 50–60% as compared to the whole man. In this case the claimant went a little farther contending that he was totally and permanently disabled with this back sprain even though no doctor, including his own doctor, could find anything wrong with him to substantiate these subjective complaints.

"Unlike most of these cases which come before the Commission, the defendant came forth with the testimony of the Industrial Commission Rehabilitation Counselor who in this case was able to do his job. He worked with the employer and he worked with the claimant's doctor. He found out from the doctor the restrictions that were placed upon the claimant and was able to find work within those restrictions which the doctor recommended the claimant get into. Had the claimant followed his doctor's advice and cooperated with the Rehabilitation Counselor, the claimant's permanent disability would have been little or nothing.

"However, in order to avoid such an inhumane result, the claimant simply refused to even attempt to do the work. By proceeding in that fashion, the claimant has now received from the Commission the decision giving him some $13,500. In other words, 25% as compared to the whole man. All of this is done even in face of Section 72–403, Idaho Code, which specifically provides that where suitable work is offered and the claimant refuses it, he shall receive no compensation.

"It is difficult to understand a system which places a premium on a claimant who, without any objective medical findings, can simply refuse to accept employment offered to him through the very system which is being supported by the workmen's compensation system and work which his own doctor has cleared through the vocational counselor.

"Such a result is not only undesirable, it is absolutely unwarranted."

**344**

R. pp. 59–62.

It is thus to be noted that Argonaut, while initially conceding no fault with the findings of the Commission, and while contending that the statute forfeits away a claimant's disability award where the claimant declines to take or try light work, nevertheless, is essentially arguing against the award, the essence of which is the unique proposition that "Had the claimant followed his doctor's advice and cooperated with the Rehabilitation Counselor, the claimant's permanent disability would have been little or nothing." Exactly how this would have cured the permanent disability to the back is not further explained or suggested.

The brief submitted by Mr. Gomez supplied the Commission with a resume of the statutory law and Supreme Court decisions:

"Defendant in this Motion for Reconsideration cites Idaho Code 72–403 and contends that based upon this statute, Mr. Gomez, although he has sustained permanent physical impairment and disability as a result of his industrial accident of June 7th, 1979, is not entitled to any compensation whatsoever. The statute cited by the Defendant was enacted by the Idaho State Legislature in 1917 and the language thereof has never been modified.

"Both prior and subsequent to the 1971 recodification of the Idaho Workmen's Compensation Law, weekly compensation benefits were and are available at a reduced rate for a partially disabled claimant. Idaho Code § 72–408 provides as follows:

"'Income benefits for both total and partial disability during the period of recovery shall be paid to the disabled employee subject to deduction on account of a waiting period and subject to the maximum-minimum limit set forth in Section 72–409 as follows:

. . . . .

(3) Partial disability. For partial disability during the period of recovery an amount equal to sixty per cent (60%) of his decrease in wage-earning capacity.'

Under the old code, I.C.A. 43–1112, the statute provided:

"'Where the injury causes partial disability for work, the employer, during such disability and for a period not exceeding 150 weeks, shall pay the injured workman a weekly compensation equal to fifty-five per cent of the difference between his average weekly wages before the accident and the weekly wages he is able to earn thereafter . . . .'"

"I find no Idaho cases interpreting Idaho Code 43–1117, now I.C. § 72–403 but it appears clear that such statute had no application to benefits provided under I.C.A. 43–1113—the statute which set forth compensation rates and benefits for scheduled losses of the human anatomy. In *Peterson's Estate vs. J.R. Simplot Company,* et al., 83 Idaho 120, 358 P.2d [587] 1961, the Idaho State Supreme Court held:

"'that specific indemnity for permanent injury less than total must be paid without limitation or condition "in addition to all other compensation.".'

"Further, the Idaho State Supreme Court, in the same case, ruled that a specific indemnity award was of the nature of a judgment for liquidated damages and the right to enforce payment survived death. The present permanent partial impairment and disability statute, Idaho Code § 72–430 likewise provides that the benefits therein set forth shall be paid in addition to other benefits payable during the period of recovery and likewise provides that said benefits shall not abate or be lost because of death, Idaho Code § 72–431. Thus, it would appear that the clear legislative intent was to continue the availability of permanent partial disability and impairment benefits to an employee injured less than total 'without limitation or condition.'.

"Assuming arguendo that Idaho Code § 72–403 has application to an award of benefits for permanent partial disability and impairment then it must follow that such statute would have application for

so long as the Industrial Commission retains jurisdiction of the claim; that is, the Industrial Commission would necessarily retain jurisdiction before and subsequent to the time of an award; and thus, a claimant who had received an award would remain under surety surveillance and his benefits for partial disability and impairment would remain subject to forfeiture at any time the surety was able to establish that the claimant had refused to seek suitable work or neglected to work after said work was offered to him. The application, therefore, of Idaho Code § 72–403 to an award for permanent disability would affect the finality of said award and would subject the same to motions for modification upon grounds other than those set forth in Idaho Code § 72–719—which statute limits the Commission in reducing an award for permanent partial disability and impairment for the reasons only of: (a) change in the nature and extent of employee's injury or disablement or; (b) fraud. There is no reference in Idaho Code § 72–719 for forfeiture of benefits because an employee failed or refused or neglected to seek suitable work. Second, application of Idaho Code § 72–403 to benefits for permanent partial disability and impairment would effectuate forfeiture of said benefits for a claimant who had means of support other than his personal labor and elected for a period of time to not re-enter the labor force.

"Therefore, in conclusion, it is respectfully submitted that the decision of the Industrial Commission as it now stands is correct and that Idaho Code § 72–403 has application only to partial disability benefits provided for in Idaho Code § 72–408 Sub-Paragraph 3 and has no application to an award for permanent partial impairment or disability."

R., pp. 65–68.

A reply brief furnished by Argonaut to the Commission simply returned to the thesis of its first brief:

"If we understand the reasoning of the claimant, it goes something like this. The claimant is injured and receives temporary total disability benefits. Claimant is rated for permanent physical impairment. Claimant is then screened by the Division of Rehabilitation of the Industrial Commission, who, in coordination with the employer and attending physician, finds work for the claimant. The claimant decides to refuse to attempt to do the work. The permanent physical impairment rating given by the attending physician is 10% as compared to the whole man, however, acknowledging that if based upon objective medical findings, it would be zero. In other words, the rating is not based upon any objective medical findings that are abnormal. There is a psychoneurotic reaction equivalent to the permanent physical impairment of 5% as compared to the whole man. No statement is necessary for the condition. Further specialists examining the claimant find no permanent physical impairment relative to the back injury which is alleged. Under the foregoing circumstances, if the claimant returns to work, it would be at essentially the same wage he was making before the injury. The claimant decides not to return to work and instead, gets $13,500 which is equivalent to a disability of 25% as compared to the whole man.

"The foregoing reads something like Alice In Wonderland. Yet, it is not. Rather, it is Gomez under the Idaho Workmen's Compensation Laws of the State of Idaho."

R., p. 71.

It is thus seen that Argonaut's request for an outright forfeiture of the entire award predicated upon the Commission's established impairment rating was simply Argonaut's inordinate dismay at a Commission's award based on subjective complaints, coupled with his former employer's apparent willingness to make a job for Mr. Gomez, at least when and while the claim was pending. Absent the tender of a written contract of employment—of which there is no evidence or intimation—most trial attorneys would be expected to remain somewhat skeptical of a job offer from the very

employer whose rate stood to be affected by the outcome of pending litigation. For my part, I see considerable merit indeed in that portion of the Gomez brief which points out that working men are not always impoverished Mexican Nationals, but, on the contrary, often have other and substantial income to the point that they simply decline to push a straw broom when it hurts—or even when it does not hurt. Involuntary servitude has not been a part of The American Scene for a great, great many years.

*An afterthought on Catch 22:—*

A document entitled Job Analysis, dated April 5, 1980, and prepared on the letterhead of Argonaut Insurance Company shows the job title of "Custodian" with duties of "Cleanup-minor maintenance." This was sent to Dr. Porter and apparently influenced his signing of a certificate that Mr. Gomez could return to light work or school on April 14, 1980—both of which documents are in the record.

Mr. Thorleif Rangen, Vice President of Rangen's, Inc., testified to his participation in the preparation of the Job Analysis, and stated that he was "willing to rehire Mr. Gomez within the restrictions placed on him by Dr. Porter," adding that Mr. Gomez did not contact him, but also not claiming that he or anyone from his firm contacted Mr. Gomez with a job offer. R., pp. 76–77. Mr. Spooner testified to telling Gomez of an offer at Rangen's consonant with the Job Analysis, but did not intimate or suggest how long the job might last.

It should be remembered that throughout, Mr. Gomez, being advised and represented by counsel, made a serious and sincere effort to establish total and permanent disability. However kind and generous Mr. Rangen's motives may have been in finding a job for Mr. Gomez prior to any hearing before the Commission, it is or should be obvious to even the uninitiated that Mr. Gomez could not all at the same time accept an offer of employment based upon the Job Analysis (on Argonaut stationery) and successfully go before the Commission on his claim of total and permanent disability.

Here was a well thought out Catch 22 presentation if ever there was one. It would be interesting to know if Rangen's, Inc. (on Argonaut stationery) has *since* the entry of the award repeated the job offer. It will be interesting to later learn when this Court eventually reaches and decides the forfeiture issue if Rangen's, Inc. and Argonaut recognize that, assuming arguendo the validity of their contention, forfeitures in Idaho being abhorred, Mr. Gomez should—now that the litigation is over and he is out of the Catch 22 box—be given an opportunity to be released from the claim of forfeiture.