840 P.2d 383

Lynn MORTIMER, Claimant–Appellant–
Cross Respondent,

v.

RIVIERA APARTMENTS, Employer,
Defendant–Respondent–Cross
Appellant.

No. 19425.

Supreme Court of Idaho,
Idaho Falls, May 1992 Term.

Oct. 22, 1992.

Anderson, Pike & Bush, P.A., Idaho Falls, for appellant-cross respondent. Joel E. Tingey argued.

Thomsen & Stephens, Idaho Falls, for respondent-cross appellant. Alan C. Stephens argued.

BISTLINE, Justice.

Claimant Lynn Mortimer ("Mortimer") was seriously and permanently injured when he fell off the roof of a garage at the Riviera Apartment Complex in Idaho Falls. The Industrial Commission determined Mortimer was entitled to worker's compensation. We affirm in part and remand for reconsideration in part.

## BACKGROUND

Riviera Apartments ("Riviera") is an apartment complex owned by Dean Mortimer (Claimant Lynn Mortimer's brother), Marshall Egan, and M & M Investments. Jim Terry and Pat Mahin own M & M Investments. In September of 1987, Mortimer began working at the Riviera Apartments. Riviera carried no worker's compensation insurance.

Starting in September of 1987 until April 7, 1988, Mortimer performed various maintenance and remodeling jobs at Riviera. On April 7, 1988, Mortimer and another man were measuring the roofs on each of the garages at Riviera in order to determine how much material would be required to re-roof the garages. Mortimer stepped backwards off of a roof and suffered extensive injury.

After a hearing on the question of liability, the Commission concluded that Mortimer was an employee of Riviera and that Mortimer's injury arose out of and during the course of his employment. In so holding, the Commission rejected Riviera's claims that Mortimer was either an employee of First Financial Corporation or an independent contractor and that Mortimer was on his own errand when he was injured.

Riviera appealed to this Court, challenging the finding of liability. Mortimer moved to dismiss the appeal as premature.

While that motion was pending, Mortimer moved for an order changing the caption of the complaint to include, as defendants, the alleged owners of Riviera. The Commission denied the motion. Mortimer moved to reconsider. The Commission also denied the motion for reconsideration, in part because of the pending appeal. This Court thereafter dismissed Riviera's appeal as premature.

The type and amount of benefits to which Mortimer was entitled were determined by the Commission at a later hearing. The Commission also awarded Mortimer a 10 percent penalty, attorney fees, and costs because of Riviera's failure to comply with the statutory requirement for payment of unemployment compensation claims.

Mortimer challenges on appeal the Commission's order denying his post-hearing motions to amend his pleading. Riviera cross-appeals from the Commission's findings that Mortimer was an employee of Riviera who was acting within the scope of his employment at the time of the injury and the Commission's award to Mortimer of additional compensation, costs, and attorney fees which were assessed for Riviera's failure to secure payment of worker's compensation claims. For the reasons which follow, we remand for further consideration of: (1) the motion to change caption and (2) the question of whether Mortimer was a casual employee and thus outside the scope of worker's compensation coverage. We affirm the other rulings of the Commission.

## DISCUSSION

A. THE ORDER DENYING THE MOTION TO CHANGE CAPTION IS REMANDED FOR FURTHER CONSIDERATION.

1. *Mortimer's Appeal is Timely.*

█ Riviera first argues that Mortimer's appeal should be dismissed because Mortimer did not timely file his notice of appeal. The motion to reconsider was denied on May 14, 1991, but the notice of appeal

was not filed until July 11, 1991, fifty-eight days later. Riviera contends that the forty-two day period began to run when the Commission denied Mortimer's motion to reconsider. Mortimer argues that the notice was timely filed because the period did not begin to run until May 30, the date the Commission issued its order awarding benefits.

A party seeking review of a decision of the Industrial Commission must physically file a notice of appeal with the Commission within forty-two days from the filing date of any decision, order, or award which is appealable as a matter of right. I.A.R. 14(b). Idaho Appellate Rule 11(d) provides that only a "final decision or order of the Industrial Commission or ... [a] final decision or order upon rehearing or reconsideration by the administrative agency[ ]" may be appealed as a matter of right. Thus, whether the forty-two day period began to run when the Commission denied Mortimer's motion to change caption depends on whether that order was appealable as a matter of right as a "final decision or order upon rehearing or reconsideration."

We have previously stated that a decision of the Industrial Commission which does not finally dispose of all of the claimant's claims is not a final decision subject to appeal pursuant to I.A.R. 11(d), especially in cases where the Commission has retained jurisdiction. *Kindred v. Amalgamated Sugar Co.*, 118 Idaho 147, 149, 795 P.2d 309, 311 (1990); *see Jensen v. Pillsbury*, 121 Idaho 127, 823 P.2d 161 (1992). Here, the order denying Mortimer's motion to reconsider the motion to change caption did not finally dispose of all of Mortimer's claims; furthermore, the Commission retained jurisdiction in order to determine the amount of benefits to which Mortimer was entitled.

Riviera's reliance on *Fenich v. Boise Elks Lodge #310*, 106 Idaho 550, 682 P.2d 91 (1984), is misplaced. In that case, we dismissed an appeal from a decision that was not brought within forty-two days even though the Industrial Commission stated that it reserved jurisdiction over the claimant. Although at first glance *Fenich*

may seem to be in conflict with *Kindred*, the two cases are distinguishable on their facts. The distinguishing feature of *Fenich* is that, notwithstanding the continuing jurisdiction of the Commission on other matters, the order appealed from fully and completely resolved all the issues in that cause. In *Kindred*, there were still other matters relating to the same cause which were yet to be fully resolved.

This case is like *Kindred* in that the Commission had continuing jurisdiction after the denial of the motion to change caption and the motion to reconsider because there were still unresolved issues in that same cause, to wit: the extent of benefits Mortimer was entitled to receive. In other words, the Commission had not fully and completely resolved all the issues in Mortimer's case when it denied his motion to reconsider. To require Mortimer to appeal within forty-two days after the denial of his motion to reconsider would contravene our policy of avoiding piecemeal litigation.

Accordingly, pursuant to *Kindred*, we hold that the order denying the motion to reconsider was not a final decision or order for purposes of I.A.R. 11(d). The appeal was timely because it was filed within forty-two days after the issuance of the Commission's decision awarding benefits.

2. *The Order Denying The Motion to Change the Caption is Vacated and Remanded for Further Consideration.*

As noted above, Riviera appealed from the finding of liability. The appeal was eventually dismissed. One of the issues raised in that appeal was that the judgment is not enforceable because the Riviera Apartments is not a legal entity, such as a partnership or a corporation. The Commission found the fact to be that Riviera "is an apartment complex owned by Dean Mortimer, Marshall Egan, and M–M Investments, which in turn was owned by Jim Terry and Pat Mahin." It further appears that the name of the apartment complex has been changed.

According to Mortimer, if Riviera's argument that the Riviera Apartments are not an existing legal entity is correct, it would follow that Mortimer's judgment against the Riviera Apartments could be unenforceable. Therefore, in response to Riviera's argument, Mortimer moved to change the caption to list the defendants as "Dean Mortimer, Marshall Egan, Thomas Mahin, Jim Terry, Employers, dba Riviera Apartments." The motion was "based on the grounds that ... the evidence established that Riviera Apartments was jointly owned by Dean Mortimer, Marshall Egan, Thomas Mahin, and Jim Terry."

Riviera opposed the motion because "[t]he evidence showed that Riviera Apartments was jointly owned by Dean Mortimer, an individual, Marshall Egan, an individual, and a partnership, M–M Investments, which partnership was comprised of two partners, Thomas Patrick Mahin and Jim Terry."

■ The Commission denied the motion and Mortimer's motion for reconsideration because the motion was made "long after the determination of liability was made. Moreover, th[e] motion was made after [the] Notice of Appeal to the Supreme Court ... was filed." We vacate the Commission's order and remand for reconsideration.

We first note that I.C. § 72–708 requires that "[p]rocess and procedures under [the worker's compensation law] shall be as summary and simple as reasonably may be and as far as possible in accordance with the rules of equity." Keeping that admonition in mind, there are two reasons for vacating those orders of the Commission.

First, Mortimer should not be prejudiced by Riviera's filing of a premature appeal. While we understand the Commission's hesitation to take any action while a case is pending on appeal, *see* I.A.R. 13(d) (providing for an automatic stay of any order or award of the Industrial Commission which is appealed), it would be inequitable to allow Riviera to benefit by incorrect appellate procedures in attempting to appeal a non-appealable order. Thus, because the appeal was premature, the Commission's concern that the issue of liability was on appeal at the time Mortimer's motion to change the caption was filed was not a basis for denying the motion.

Second, we believe that in this case it was immaterial that the motion to amend was made after the testimony on liability was heard. There is no time limit on such motions in the Industrial Commission's Rules of Judicial Practice and Procedure. It is interesting to note that the owners did not object to the motion on the basis that the amendment would prejudice them. In objecting, they only asserted that M–M Investments should be the named defendant instead of Terry and Mahin as individuals. Nor is there any argument made on appeal that the owners would have defended the matter differently had the action been correctly captioned from the beginning. Moreover, nothing in the record indicates that the amendment would have prejudiced the owners. To the contrary, it appears that their interests were fully and competently represented during the proceedings and that the claim against them was fully defended against.

We believe that it would be inequitable to allow the owners to avoid compensating Mortimer, an employee seriously injured during the course of employment, by relying upon a technical error in pleading. Idaho Code § 72–708 requires otherwise. This is especially so because it appears that in the proceedings below the interests of the owners were fully and competently represented by the attorney representing the Riviera Apartments. (One might query: Who does the attorney for the Riviera Apartments represent, if not the owners thereof? And if the Riviera Apartments do not exist as an independent legal entity, how does it have standing to pursue or resist an appellate proceeding?)

Idaho Code § 72–732(4) gives the Court the authority to set aside an order or award of the Commission if "the findings of fact do not as a matter of law support the order...." Believing this to be the case here, we vacate the Commission's order denying Mortimer's motion to change the caption and remand the cause for the

**844**

Commission to hold further proceedings to determine whether the requested amendment of the caption would unfairly prejudice the owners of the Riviera Apartments.

B. THE FINDINGS MADE BY THE COMMISSION AS TO LIABILITY ARE AFFIRMED, BUT THE CAUSE IS REMANDED TO THE COMMISSION FOR FURTHER FINDINGS AS TO WHETHER MORTIMER WAS A CASUAL EMPLOYEE.

1. *There is Sufficient Evidence in the Record to Support the Commission's Finding That Mortimer Was Not an Independent Contractor And That Mortimer Was Acting Within the Scope of His Employment for Riviera at the Time of the Accident.*

Riviera argues that the evidence shows that Mortimer was an independent contractor, not an employee. There was evidence that Mortimer was told that he was an independent contractor and that he understood that he was to be responsible for his own insurance and taxes. Riviera paid him a flat amount every two weeks. There were no deductions taken from his check. Additionally, Dean Mortimer testified that Lynn said that Riviera could not tell him what hours he had to work because he was an independent contractor.

The Commission, however, found that the evidence preponderated in favor of an employee/employer relationship between Mortimer and Riviera. Riviera and specifically Dean Mortimer, acting on behalf of Riviera, assumed and exercised direction and control over the time, manner, method, and details of all work performed by Mortimer. There was evidence that Mortimer could not work whatever hours he chose and could not come and go as he pleased. Rather, he was told to work from 8:00 a.m. to 5:00 p.m., five days per week. Further, Mortimer did not have the authority to hire any of his own assistants without the prior approval of Riviera. Additionally, other than the occasional use of Mortimer's truck, Riviera supplied all the tools and supplies used by Mortimer in his remodeling work.

An independent contractor is a "person who renders service for a specific recompense for a specified result, under the right to control or actual control of his[/her] principal as to the result of his[/her] work only and not as to the means by which such result is accomplished." I.C. § 72–102(14). Whether a claimant is an employee or independent contractor is a factual determination. *Burns v. Nyberg*, 108 Idaho 151, 697 P.2d 1165 (1985). The ultimate question to be decided is whether the employer assumes the right to control the time, manner and method of executing the work of the employee, as distinguished from the right to merely require certain results. Four factors are used to determine whether a "right to control" exists: 1) direct evidence of the right, 2) method of payment, 3) furnishing major items of equipment, and 4) the right to terminate the relationship at will. *Burdick v. Thornton*, 109 Idaho 869, 712 P.2d 570 (1985). This Court will not overturn factual findings made by the Commission when those findings are supported by substantial and competent evidence, Idaho Const. art. 5, § 9; I.C. § 72–732, even if conflicting evidence exists. *Aldrich v. Lamb–Weston*, 122 Idaho 361, 834 P.2d 878 (1992); *Cantu v. J.R. Simplot Company*, 121 Idaho 585, 826 P.2d 1297 (1992).

Here, there is substantial evidence to support the Commission's finding. Most of the tools and equipment were purchased by Riviera. Riviera also purchased the supplies and materials used to renovate the apartments. Claimant had no authority to hire any other person to work with him. There was evidence that Mortimer was instructed to work regular hours each day, check in with the apartment manager when he arrived, inform the manager of what he intended to do that day, fill out forms to account for his time, and change the task he was doing when requested by the manager. He did not submit a bid for the work done. Instead, he was paid $1,500 a month regardless of the amount of work completed. He was terminable at will. He was

not hired for a specific result, but rather completed assigned work as needed.

■ The only evidence suggesting an independent contractor relationship is that one of the owners told Mortimer that he would be an independent contractor, to which Mortimer agreed. However, any such agreement whereby Mortimer would be called an independent contractor, without him actually being one, is void for public policy. Idaho Code § 72–318 provides that "[n]o agreement by an employee ... designed to relieve the employer ... from any liability created by this law, shall be valid." *See Burdick v. Thorton,* 109 Idaho 869, 872–73, 712 P.2d 570, 573–74 (1985).

Justice Boyle's statement in *Olvera v. Del's Auto Body,* 118 Idaho 163, 795 P.2d 862 (1990), reminded the Commission and sureties that:

> *The law in this state is ... well established* that when doubt exists as to whether an individual is an employee or an independent contractor under the Worker's Compensation Act, the Act must be given a liberal construction by the Industrial Commission in its fact finding function *in favor of finding the relationship of employer and employee.*

118 Idaho at 165, 795 P.2d at 864 (emphasis added). With that precept in mind we have reviewed the record and the Commission's decision. We conclude there is substantial and competent evidence in the record supporting the Commission's finding that Mortimer was not an independent contractor, but rather was an employee of Riviera.

■ Riviera also argues that there was insufficient evidence to show that Mortimer was acting within the scope of his employment at the time of the fall, asserting that Mortimer was on his own errand when he was injured. The determination of whether an accident arose out of and in the course of employment is a factual determination. Accordingly, the Court will defer to the Commission's finding if it is supported by substantial and competent evidence. *Teffer v. Twin Falls School Dist. No. 411,* 102 Idaho 439, 631 P.2d 610 (1981).

■ According to Riviera, the testimony of Marty George establishes that he and Mortimer were measuring the garage roofs in order to present a bid to Riviera for fixing the roofs. Riviera asserts under *Paullas v. Andersen Excavating,* 113 Idaho 156, 160, 742 P.2d 411, 415 (1987), that this evidence was unimpeached and must be accepted by the Commission. Moreover, Riviera argues that, contrary to the Commission's findings, Dean Mortimer did not testify that he ordered his brother to measure the roof.

What the record discloses is that George did not testify as to Mortimer's motive for measuring the roofs. George testified that he "personally" was there to measure the roofs in order to submit a bid to Riviera. Thus, while George may not have been acting as an employee of Riviera, his testimony does not exclude the likelihood that Mortimer was engaged in measuring the roofs, doing so by direction of his employer. In fact, Mortimer testified that his brother, Dean, instructed him to measure the roofs for the purpose of determining the amount of material needed to reroof the garages because Dean was considering having Riviera buy the materials and then hiring a laborer to install them. It is true that Dean did not testify at the hearing that he told his brother to measure the roofs (he testified he did not remember telling him to do so); nevertheless, it would have been within the province of the Commission to conclude that Dean's deposition testimony stating that he told Mortimer to measure the roofs was the more accurate.

■ Even if Lynn Mortimer had intended to make a bid to do the job as an independent contractor based upon the measurements he took for Riviera, that additional personal purpose would not take him outside the scope of his employment. An act done partly for personal reasons and partly to serve an employer is still within the scope of employment. *Van Vranken v. Fence–Craft,* 91 Idaho 742, 749, 430 P.2d 488, 495 (1967).

We hold that the evidence supports the Commission's finding that Lynn Mortimer

was acting within the scope of his employment at the time of his accidental injury.

### 2. The Court Does Not Have Jurisdiction to Consider Riviera's Argument That First Financial Services Was Mortimer's Employee.

Dean Mortimer, claimant's brother, in addition to being one of the owners of Riviera, is also the majority stockholder in First Financial Corporation, a mortgage lending and real estate business. First Financial Corporation carried worker's compensation insurance through American States Insurance Company. After the accident, Lynn Mortimer was placed on the First Financial payroll; in submitting his compensation claim he named both Riviera and First Financial as employers. At the Commission's hearing on the liability issue, Riviera claimed that First Financial was Lynn Mortimer's employer.

The Referee found that Lynn Mortimer was not an employee of First Financial Corporation, instead finding that he was put on the First Financial payroll and paid with a First Financial check for the purposes of attempting to gain worker's compensation coverage under First Financial's worker's compensation insurance policy. Riviera cross-appealed from the Commission's determination which adopted the referee's ruling.

■ We decline to consider this issue. Idaho Appellate Rule 18(i)(5) requires the cross-appellant to certify that all parties required to be served under I.A.R. 20 have been served. Idaho Appellate Rule 20 states that "[a]t the time of the filing of the appeal or cross-appeal, the appellant or cross-appellant shall serve copies thereof upon all persons who were parties and who appeared in the proceedings below, whether or not they are parties to the appeal." Unless proper service has been made on all parties entitled to service, the Court is without jurisdiction to act on those matters which affect the unserved parties. *See Finlayson v. Humphreys,* 67 Idaho 193, 195, 174 P.2d 210, 211 (1946); *Helgeson v. Powell,* 54 Idaho 667, 673, 34 P.2d 957, 959 (1934).

■ Here, Riviera's notice of cross-appeal does not show that it has served a copy of the notice of cross-appeal on First Financial, and, not surprisingly, First Financial has not appeared or defended against Riviera's cross-appeal. As First Financial was a party who appeared below, as well as a party with a direct interest in the outcome of the appeal, Riviera was required under I.A.R. 20 to serve a copy of the cross-appeal on it. Moreover, it would be manifestly unfair and likely in derogation of procedural due process to determine an issue with potentially significant financial consequences against a party who was not given notice or an opportunity to defend. It cannot be said that Lynn Mortimer, by opposing Riviera's argument, has adequately represented First Financial's interests. If anything, it seems that Lynn Mortimer would prefer that the Court find that First Financial was his employer. First Financial has worker's compensation insurance coverage, making it easier to obtain a collectible judgment than would be so if claimant Mortimer could only look to Riviera for satisfaction.

Because Riviera failed to comply with I.A.R. 20, the Court is without jurisdiction to consider the issue of whether the Commission erred in finding that First Financial was not Mortimer's employer.

### 3. The Commission Erred By Failing to Address Riviera's Argument That Mortimer Was Not Covered Under Worker's Compensation Law Because He Was Only a Casual Employee.

■ Riviera, in presenting evidence to the Commission, urged that Mortimer was only a casual employee and therefore outside the scope of worker's compensation coverage. I.C. § 72–212(2). Although Riviera made it clear at the hearing conducted by the Commission's referee that one of the contested issues was whether Mortimer was a casual employee, the Commission made no findings regarding the casual employee issue. Riviera argues that the Commission's failure to address the issue was error. We agree.

This case is similar to *Gomez v. Rangen's, Inc.*, 105 Idaho 337, 340, 670 P.2d 42, 45 (1983). There, the employer raised the question of whether the worker was barred from receiving worker's compensation benefits by reason of his alleged failure to accept suitable employment. This Court reversed the Industrial Commission's award of benefits and remanded the cause to the Commission because of its failure to discuss the properly presented issue. 105 Idaho at 340, 670 P.2d at 45; *see also O'Dell v. J.R. Simplot Co.*, 112 Idaho 870, 873, 736 P.2d 1324, 1327 (1987) (failure of Commission to consider a properly raised defense required the reversal of the decision). The same result as in *Gomez* must be obtained here. The cause is remanded to the Commission for a determination, based upon the evidence now in the record, of whether Lynn Mortimer was a casual employee.

In sum, we affirm the Commission's findings that Lynn Mortimer was not an independent contractor and that he was acting in the course and scope of his employment when he was injured. We decline to address Riviera's argument that First Financial was Mortimer's employer.

## C. THE COMMISSION'S ORDER IMPOSING A 10 PERCENT PENALTY, COSTS, AND ATTORNEY FEES ON RIVIERA IS AFFIRMED.

The next issue presented is whether Mortimer is entitled to benefits arising out of Riviera's failure to secure payment for the claim. According to I.C. § 72–210:

If an employer fails to secure payment of compensation as required by this act, an injured employee may claim compensation under this law and shall be awarded, in addition to compensation, an amount equal to ten percent (10%) of the total amount of his compensation together with costs, if any, and reasonable attorney's fees if he has retained counsel.

The Commission did award the 10 percent penalty, costs, and attorney fees to Mortimer. Riviera does not dispute that it had failed to secure payment of compensation.

Nevertheless, it argues that the award should be reversed. We disagree.

 Riviera first argues that the term "employer" as found in the statute is unconstitutionally vague. Although a statute may be held unconstitutionally vague if "persons of common intelligence must necessarily guess at its meaning ...", *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); *see also State v. Marek*, 112 Idaho 860, 866, 736 P.2d 1314, 1320 (1987), that is not the case here. Idaho Code § 72–102(11) defines "employer" as

any person who has expressly or impliedly hired or contracted the services of another. It includes contractors and subcontractors. It includes the owner or lessee of premises, or other person, who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workmen there employed. If the employer is secured, it means his surety so far as applicable.

That statutory definition is sufficient to inform an ordinary person whether s/he falls within the term "employer," and we so hold.

 Riviera also argues the award should be reversed because it was not given notice that the application of the statute would be considered at the benefits hearing. It points out that I.C. § 72–713 requires the Commission to give at least ten days notice of the time, place, and "issues to be heard" at any hearing. However, that was done in this case. The notice for the hearing states that the purpose of the hearing was to "determine the amount of benefits to which Claimant is entitled." We believe the Commission's use of the term "benefits" in the notice was sufficient to give Riviera notice that the applicability of I.C. § 72–210 was at issue.

 Finally, Riviera argues that Mortimer is estopped from claiming the benefits of I.C. § 72–210. Whether that is true, however, is not pertinent. The statute does not require the claimant to make a

claim under I.C. § 72–210 in order to receive an award thereunder. Rather, the statute provides that the Commission "shall" award the 10 percent penalty in addition to the amount of compensation claimed by the claimant if it finds that the employer has failed to secure payment. Mortimer need only make a claim for compensation in order to be eligible for an award under I.C. § 72–210. Once that claim is made it is the Commission's right and obligation to make the additional award against an employer who has failed to secure payment, as Riviera failed to do. Riviera makes no contention that the Commission is barred from complying with the plain language of the statute. The Commission's order is affirmed.

Finally, Riviera argues that the award of attorney fees should be reversed because the I.C. § 72–210 only permits "reasonable" attorney fees and the Commission never made a finding that the contingency fee was reasonable. Because the record shows that the Commission stated that "[i]n light of the facts and circumstances of this case, the Commission finds that the one-third contingency fee is reasonable," we reject this argument.

In sum, we affirm the Commission's award of the 10 percent penalty as well as costs and reasonable attorney fees.

## CONCLUSION

1. The Commission's order denying Mortimer's motion to change the caption is vacated and remanded to the Commission for reconsideration.

2. The cause is remanded to the Commission for consideration and disposition of Riviera's claim that Mortimer was a casual employee. The Commission's other findings as to liability are affirmed.

3. The Commission's award of attorney fees, costs, and the imposition of the 10 percent penalty is affirmed.

4. If the Commission determines upon remand that Mortimer was not a casual employee, reasonable attorney fees and costs on appeal should be awarded to Mortimer pursuant to I.C. § 72–210. *Swenson*

*v. Estate of Craner,* 117 Idaho 57, 61, 785 P.2d 621, 625 (1990).

JOHNSON and McDEVITT, JJ. concur.

BAKES, Chief Justice, specially concurring:

I concur in all of the Court's opinion, except a reservation I have about Part A(2) which seems to suggest that the claimant can proceed against one entity, "Riviera Apartments," throughout the proceedings, and then at the end try to bring in and hold responsible certain individuals by the mere filing of a motion to change the caption of the proceedings in order to list the individuals as defendant-employers. I see some procedural due process problems with that procedure. However, since the Court merely vacates and remands on that issue, and remands the cause "for the Commission to hold further proceedings to determine whether the requested amended of the caption would unfairly prejudice the owners of the Riviera Apartments," I concur with the Court's remand to hold further proceedings on that issue.

CAREY, J. Pro Tem, concurs.