(No. 5894. December 9, 1932.)

H. A. HANSEN, Respondent, v. RAINBOW MINING AND MILLING COMPANY, LTD., Employer, and STATE INSURANCE FUND, Surety, Appellants.

[17 Pac. (2d) 335.]

H. J. Hull and P. C. O'Malley, for Appellants.

James A. Wayne and Whitla & Knudson, for Respondent.

GIVENS, J.—By written contract, respondent agreed to perform for appellant Rainbow Mining & Milling Company, a specified amount of development work at so much per linear foot, and while so employed, suffered an injury for which he claims compensation.

Appellants contend that by reason specifically of this paragraph in the contract: "It is further agreed, that second party shall take care of and pay all charges relating to insurance or hospital charges in connection with the said work and will fully comply with the Idaho State Insurance Law in that respect and second party does hereby release and agree to save harmless and protect the said party of the first part from any and all claims or damages or injuries of whatsoever kind and description for or on account of any accident, or injury, in connection with said work or that may or might arise therefrom or on account thereof or, and, in connection with the doing of the work contemplated under the terms of this agreement," and generally as to the other terms of the contract, respondent was an independent contractor, hence not entitled to compensation.

Respondent urges that he was an employee, not an independent contractor. We may concede that if we look only to the written contract, there would be strong reason to conclude that he was an independent contractor, and hence not entitled to compensation (*Taylor v. Blackwell Lumber Co.*, 37 Ida. 707, 218 Pac. 356), but " 'The primary test as to the character of a contract is the intention of the parties to be gathered from the whole scope and effect of the language used, and mere verbal formulas, if inconsistent with the real intention, are to be disregarded. It does not matter by what name the parties chose to desig-

nate it.' " (*Wallace Bank & Trust Co. v. First Nat. Bank*, 40 Ida. 712, 719, 50 A. L. R. 316, 237 Pac. 284.)

Appellants argue that the fund had no jurisdiction to insure an independent contractor, claiming a parity of reasoning between the holdings in *Southern Pac. Co. v. Jensen*, 244 U. S. 205, Ann. Cas. 1917E, 900, 37 Sup. Ct. 524, 61 L. ed. 1086, L. R. A. 1918C, 451, *London Guarantee & Accident Co. v. Sterling*, 233 Mass. 485, 124 N. E. 286, *Doey v. Howland Co.*, 224 N. Y. 30, 120 N. E. 53, *Zurich Gen. Acc. & Liability Ins. Co. v. Industrial Acc. Com.*, 191 Cal. 770, 218 Pac. 563, and similar authorities, that state workmen's compensation acts could not cover maritime workers. The distinction between the two is clear. Those cases held that the state agencies could not insure maritime .employees because that was a field of industrial activity solely under federal jurisdiction; they did not hold that if the employee might have been either a maritime employee or in some other not excluded class, dependent upon the contract of employment, and that the employer and insurance carrier had treated the workman not as a maritime employee, but in such other class which could have been insured under the state laws, that the employer and carrier would not have been held to their contract. The latter is the situation herein. The trial court awarded compensation not on the basis that the workman was an independent contractor, but that the employer and carrier considered him as an employee, and that such was his status, and the above authorities recognize such distinction where a different cause of action is involved; i. e., tort, not workmen's compensation.

In *Chapin v. Scott*, 44 Ida. 566, 260 Pac. 172, the sole question was whether under the stipulated facts, the injured party was a subcontractor. Neither the employer nor surety had at any time treated him as an employee, nor were there other facts and circumstances as herein, bearing upon his status. *Kindall v. McBirney*, ante, p. 65, 11 Pac. (2d) 370, 371, held that certain statutory requirements bringing under the operation of the Workmen's Compensation Act otherwise

excluded employments were mandatory. Herein, it was merely a question of how the workman was employed, no statutory requirements being involved.

██ Respondent's status with relation to the contract of insurance between appellants and his relation to appellant mining company is to be determined not alone from the written contract, but from all the facts and circumstances established by the evidence. (*Schurger v. Moorman,* 20 Ida. 97, Ann. Cas. 1912D, 1114, 117 Pac. 122, 36 L. R. A., N. S., 313.)

Since there is no real dispute in the evidence, only a question of law is presented. (*Horst v. Southern Ida. Oil Co.,* 49 Ida. 58, 286 Pac. 639.)

██ Mr. Austin, president of the mining company during all the period involved herein, testified that during the performance of his contract, sometimes Hansen, sometimes he, himself, hired the men working under Hansen. That the company paid all labor bills direct to the workmen, except some who took part of their pay in stock of appellant mining company. That workmen's compensation insurance was carried with the State Insurance Fund, and that the premiums were paid by the company to the fund on the entire labor account, including respondent and his colaborers. That the labor, material bills and insurance premiums were deducted from any money that would be coming to Hansen under his contract.

The insurance policy between the fund and the mining company was not introduced in evidence.

To prove the construction placed by the parties thereto on the written contract in question, respondent introduced an identical contract previously made by the mining company with parties other than respondent, and correspondence with the fund construing it. Overcoming appellants' objection that because with third parties this evidence was inadmissible, direct connection between the construction placed on this contract by the fund and the one involved herein, as bearing upon respondent's status, is found in a letter, claimant's exhibit 6, dated January 30,

1925, written to the manager of the fund by appellant mining company herein. This letter was one of a series between the manager of the fund and the company, as to the precise point here, namely, whether the parties predecessor to respondent herein were independent contractors or employees. The concluding paragraph of this letter states that ''The insurance covering Mr. H. A. Hansen (respondent herein), who has the present contract and his men will be taken care of through this office, and the premium charged to him.''

The connection thus made is this: That the same arrangement which evidently was finally agreed upon between appellant mining company and the fund as to respondent's predecessor was carried over and became effective as to him.

The query as to the exact status of the men making this contract with the Rainbow Mining Company, similar in all particulars with respondent's, was apparently first questioned by the State Insurance Fund itself, in a letter dated November 29, 1924, claimant's exhibit 1–b, this paragraph thereof being the significant one in this controversy:

''The State Industrial Accident Board has ruled that where it is difficult to determine where to draw the line between a contractor or a workman the employer has a right to take out a policy in his name covering all employment and deduct from any amounts due the contractor the amount of premium he is required to pay on his payroll.''

The next letter in the series introduced in evidence was one written to the manager of the fund by the mining company, and was in part as follows:

'' . . . . The enclosed report includes all of the monies paid out by the Rainbow Mining & Milling Company for days labor and clerical work for the year 1924; however we paid out $4484.34 for work done under contract. The Contract provided that insurance covering their men would be taken care of by the contractor.

''This year it is our intention to cover the contractor ourselves and charge them the amount of the premium. . . . . ''

To this letter, the fund replied as follows:

"The Rainbow Mining and Milling Co.,

"Peyton Building,

"Spokane, Washington.

"Attention Mr. Geo. Austin, Pres.

"Dear Sir:—

"In reply to your letter of January 17th with enclosed payroll report in which you reported your actual payroll for miscellaneous work at $2311.12.

"As I note that your mining operations during the past quarter was done on a contract basis I presume that the proper classification for this payroll would be under 'road work' or manual #6042. Also kindly advise us of the name of the man you contracted with for employment in connection with your mining operations, in which you state that you paid out $4484.34 and if convenient, the name of the insurance carrier that they were carrying their compensation insurance with; for I presume that you understand that if these contractors' failed or neglected to take out a policy in their own name we will have to include their payroll under your policy and look to you for the payment of this premium.

"If these men were working as independent contractors you would have a right, under the compensation Act of this State, to deduct the amount of premium you were required to pay on their payroll; and if they are not carrying a policy the State Industrial Accident Board would hold your company, as principals, liable in event of an injury to one of their workmen if the injury was sustained in the course of employment, and as your company is carrying a policy with this Fund naturally the Fund would have to assume liability for the payment of the loss.

"On receipt of this information we shall check their risk up and if we find that they are fully protected you will be relieved from any liability on their account; otherwise we will be compelled to charge this payroll to your account.

"We are enclosing, herewith, a copy of our rate manual and as I note it is your intention for the coming year to

include all of your subcontractors' under your policy, as explained above, you will have a right to deduct from their contract price the amount of premium you are required to pay on their payrolls.

"Yours truly,
"STATE INSURANCE FUND.
"By W. D. YAGER,
"Manager."

The next three letters in point of time in this series concern themselves with the adjustment of the amount of premiums to be paid by appellant mining company, and their securing this sum from the men with whom they had contracted.

The next two letters call attention to the difference between ordinary accident insurance and workmen's compensation insurance.

Turning now to the testimony of the respondent himself, we find he stated that he worked with the understanding that he was covered by workmen's compensation insurance carried by appellant mining company with the State Insurance Fund.

Miss Nix, employed by appellant mining company, testified that respondent's time was included in the pay-roll reports by appellant mining company to appellant fund, shown by defendants' exhibit "A." Miss Nix was produced as a witness by the appellants, who likewise introduced in evidence defendants' exhibit "B," which is identical with respondent's exhibit 13, the pertinent portion of these being as follows:

"It is my understanding from the company, that Mr. Hansen's earnings have been included in the Company's Pay Roll reports since he started working for this company under contract about 1925 or 1926, with the exception of the first six months' period of 1930. This was an error due to the fact that we had changed bookkeepers during that period, and the matter was not fully understood by the new bookkeeper at the time the report was sent in. How-

ever, this error was brought to the attention of the book-keeper and it was agreed that Mr. Hansen would be included in subsequent reports. Our last report, covering the last six months of 1930, included Mr. Hansen.''

The accident occurred in December, 1930. It is to be noted that the period when Hansen's pay was omitted from the pay-roll report was not the period during which the accident occurred.

■ A contract may consist and be made up of a series of letters if connected and all bearing on the same subject matter. (*Leaf v. Codd*, 41 Ida. 547, 554, 240 Pac. 593; *First Nat. Bank v. Reins*, 42 Ida. 720, 248 Pac. 9.)

■ The whole scope of the evidence is to be considered in arriving at what the true intent of the parties really is. (*Wallace Bank & Trust Co. v. First Nat. Bank, supra.*)

After the accident, and subsequent to the contract with respondent, appellant mining company made another contract with other parties, Schmidt, Wickberg and H. O. Hanson, containing the same provisions with respect to the carrying of insurance as found in respondent's written contract, and the previous contract with Neff and others. While different parties, the correspondence about this contract shows the understanding the fund had with regard to the relationship existing under this contract.

Under date of April 24, 1931, the mining company wrote as follows:

''State Insurance Fund,

''Boise, Idaho.

''Gentlemen:

''We are about to let a contract with a Mr. Henry O. Hanson, and should like you to advise us how we shall make out our reports to you, so as to assure protection under our policy, to both Mr. Hanson and the men working under him.

''Yours very truly,

''RAINBOW MINING & MILLING CO.''

to which the Fund replied:

"Rainbow Mining & Milling Co. Ltd.
    "301 Mohawk Bldg.
        "Spokane, Wn.
"Gentlemen:

"Replying to your letter of the 24th inst., would state that the State Insurance Fund has in the past followed the policy of including work, such as that to be done for your company by Mr. Hanson, under policies as issued, including in cases of this kind, both the contractor and his employees, as it appears that practically speaking the contractor, or in the case of Mr. Hanson, occupies the position of a foreman for your company, and that the work is done under contract as a matter of convenience more than for any other purpose.

"In line with the preceding statement, we will assume coverage for Mr. Hanson and his employees. This will require your Company to submit the payrolls of all persons working for Mr. Hanson and also to include a payroll representing the remuneration of Mr. Hanson, himself. A satisfactory method of submitting this would be to report Mr. Hanson at the standard rate of wages for mine foremen.

"Trusting that the preceding will be satisfactory, we are,

"Yours very truly,
"STATE INSURANCE FUND.
"P. C. O'MALLEY, Manager,
"By (Signed)
"L. F. BRACKEN, Auditor."

It is urged by the State Insurance Fund that they never saw the contract between any of these parties. If this be the case, they cannot escape liability because of the paragraph urged by them, for the reason that it is evident they were furnishing insurance on the basis of their understanding of the status of respondent and other workers similarily situated, agreed upon in their correspondence with appellant mining company.

The president of the mining company stated that it was their intention to cover respondent. Miss Nix stated that his pay was included in the pay-roll reports and premiums paid on the basis that he was an employee. Respondent testified that it was his understanding that he was covered.

The fund itself, since the accident, in reply to a direct inquiry as to the status of the parties under a contract identical with that had by respondent, stated that the insurance furnished would cover not only the employees of the parties to the contract, but the men making the contract themselves, and has charged for the insurance and been paid for it on that basis.

The conclusion is inescapable, therefore, that it was the intention, carried out by payment of premiums and the issuance of insurance in accordance therewith, that respondent was not an independent contractor, but an employee, and his status so recognized, and that the trial court was correct in so concluding.

Judgment affirmed; costs to respondent.

Lee, C. J., and Budge, Varian and Leeper, JJ., concur.