249 P.2d 806

**FITZEN v. CREAM TOP DAIRY et al.**

No. 7893.

Supreme Court of Idaho.
Oct. 29, 1952.

Anderson & Anderson, Pocatello, for appellants.

E. B. Smith, Boise, for respondents.

THOMAS, Justice.

Cream-Top Dairy operated a dairy near, but outside, the city limits of Pocatello, Idaho. Franklin Richard Fitzen entered into an oral agreement with the Dairy to dig a cesspool as a necessary part of the sanitary sewage disposal system of the Dairy. While so engaged Fitzen encountered bad air and poisonous gas some 37 feet below the surface which seeped into the area below the shaft, overcoming him and causing his death, on August 7, 1951.

The dependents of decedent filed an appropriate claim for compensation benefits under the Workmen's Compensation Act, I.C. § 72–101 et seq. Upon hearing before the Industrial Accident Board the claim was denied on the ground that the relationship between the Dairy and the decedent was that of principal and independent contractor, and not that of employer and employee, and further, that Fitzen, at the time was engaged in casual employment and that the employer had not filed an election with the Industrial Accident Board for compensation coverage of any casual employment.

From the decision of the Board this appeal was taken.

The decision of the Board involves a determination of two questions of law, that is, whether or not the decedent was an independent contractor or an employee, and, if an employee, whether he was, at the time of his death, engaged in casual employment. By appropriate assignments of error the questions of law are raised on this appeal.

The deceased was regularly employed by the Railroad Company as a machinist's helper five days a week. There is no evidence in the record that he engaged in digging cesspools for any one other than the Dairy.

The agreement between the Dairy and deceased was oral; the terms and conditions of such employment were not known by any one except the deceased and Mr. Thomson who, together with his wife, were the sole owners of the Dairy. The only testimony in the record as to the terms and conditions of the agreement is that of Mr. Thomson, which is in part supplemented by the testimony of Mr. Gardner, who was employed and paid by deceased, to help him.

The Dairy being located outside the city limits of Pocatello, it was not connected with the city sewage disposal system. It was necessary as a part of the sanitary operation of the Dairy that it have and maintain an adequate sewage disposal system; this was accomplished by the construction and use of cesspools on the property from time to time. From 1934 to the date of the death of Fitzen the Dairy had dug nine cesspools to replace those which had filled up. Six of them had been dug by the father of deceased and the last three, exclusive of the one decedent was digging at the time of his death, had been dug by

him in 1949. The necessity for additional cesspools was certain, recurring, and anticipated; the life of a cesspool could not be determined in advance.

Mr. Thomson contacted deceased in July, 1951, and a conference followed in which an oral arrangement was entered into to dig a cesspool and if gravel formation was encountered additional cesspools would be dug; Mr. Thomson purchased the necessary lumber to crib three such cesspools; it was his practice to dig them in series; if lava rock or other insurmountable obstacles were encountered during the course of digging a cesspool, the work on such cesspool would be discontinued and payment made to the party doing the digging at the unit rate of $4.50 per foot. The parties agreed that the cesspool should be 4' x 4½' and that it should be dug to and into the gravel, as the earlier cesspools had been dug. The payment of $4.50 per foot included installation of cribbing for the first ten feet of the bottom of the cesspool and labor for sawing the lumber required for such cribbing. The Dairy was to pay for all lumber and furnish labor for sawing any additional lumber necessary for cribbing over and above the ten feet, as well as cement for topping the cesspool; all other labor, together with the necessary machinery and equipment and its upkeep and maintenance, was to be furnished by Fitzen.

There were no set hours of employment or time for completion, but Thomson told deceased that he wanted the cesspool completed as soon as possible; Fitzen did the work on the days he did not work for the Railroad; Fitzen was to dig until he struck gravel and continue as far as he could in the gravel; he had previously dug three cesspools for the Dairy and each party in a general way knew what was expected of the other, without specific arrangements or instructions.

There were no arrangements with reference to nor any deductions made for Social Security or Withholding Tax.

During the construction of the cesspool the Dairy advanced money to deceased, and after his death paid his widow the balance for all work done to the time of his death on the unit basis of $4.50 per foot, although the cesspool was not completed.

After Thomson selected the site, deceased commenced work on one cesspool and Gardner on another; Gardner testified that it was his understanding from Fitzen that they were to dig three cesspools; when they had dug between three and four feet on each cesspool, Thomson stopped the work on one of them. Thomson stopped them from sawing cribbing lumber in excess of the ten feet for one cesspool, as he was to do the work on additional cribbing as it was needed; Thomson instructed them at the time he stopped them from sawing further lumber for cribbing, not to cut or saw any more until they found out how the formation was in the first well.

As had been the practice on previous occasions, and as instructed, they separated the good gravel from the dirt and put them in separate piles.

Although the dimensions of the cesspool were understood, Thomson never did check the dimensions of any which Fitzen had previously dug or the one in question.

The evidence as to whether or not Thomson had the authority to say if the work should continue or stop was confined solely to the testimony of Thomson. The other party to the contract was dead and his lips closed. The testimony of Thomson as to the presence or absence of authority on his part to order the work stopped or continued was not responsive, was evasive and lacked positiveness, although he was pressed for a definite answer. The form of the question every time it was asked called for a categorical answer. He did not testify that he could not stop the work at any time he desired; his evasive answers would imply otherwise.

■ When a doubt exists as to whether or not a workman is an employee or an independent contractor under the Workmen's Compensation Act, the Act must be given a liberal construction in favor of the relationship of employer and employee. In re Black, 58 Idaho 803, 811, 80 P.2d 24.

The record reveals no conflict in the evidence adduced at the hearing, hence there is but a question of law for this court to determine, whether the Board properly applied the law to the evidence. Schindler v. McFee, 69 Idaho 436, 207 P.2d 1158.

The line which marks the distinction between an employee and an independent contractor is quite often blurred and shadowy and is not clearly defined anywhere. However, there are some factors and elements which do operate to distinguish the two relationships and where these are sufficiently clear and positive, the question may then become one for the court to decide as a matter of law.

Except in the clearest of cases, the determination of whether the relationship is that of employer and employee or independent contractor is to be determined in each case upon its particular facts; rarely, if ever, do we find two cases involving identical facts.

■ Neither the method of payment nor the fact that the workman furnished his own equipment and employed a helper whom he paid is a controlling factor in determining the relationship. Taylor v. Blackwell Lumber Company, 37 Idaho 707, 717, 218 P. 356; Nixon v. Webber-Riley Lumber Co., 71 Idaho 238, 229 P.2d 997.

■ In determining whether or not a workman is an employee or an independant contractor, this court has recognized and applied the general test of whether or not the right to control and direct the details of the work to be performed and to say whether the work shall stop or continue, is vested in the other party to the contract. Nixon

v. Webber-Riley Lumber Co., supra; Pinson v. Minidoka Highway District, 61 Idaho 731, 106 P.2d 1020; State ex rel. Wright v. Brown, 64 Idaho 25, 127 P.2d 791. In applying the rule of liberal construction and interpreting the facts with reference to the control theory liberally, the record indicates that there was no contract for the completion of a full job of digging a cesspool, but only a contract to dig at a unit price per foot what might or might not produce and result in the completion of the finished product, that is, the cesspool. Payment was to be made on a piecemeal basis without any relationship to further work or a completed job.

Under a liberal construction of the facts the right and authority to control and direct the details of the work and to say whether the work should stop or continue was not denied by the Dairy; on the contrary, the limited evidence given in this respect, together with the necessary inferences to be drawn therefrom, leads to but one rational conclusion, that is, that the Dairy not only had the authority and power to so control and direct the details of the work and order the work stopped or continued, but that in some respects it exercised such authority and control, as detailed above. The Dairy told decedent where to commence the cesspool, the dimensions thereof, and generally the depth to be attained; decedent was instructed and ordered to separate the gravel from the dirt, to refrain from cutting lumber for cribbing in excess of ten feet until the first well was completed, and was ordered to discontinue work upon one of the two wells which were commenced simultaneously; every order or direction given was obeyed.

Upon the facts in the record we do not believe it can be said as a matter of law that Fitzen was an independent contractor; we say this because the facts permit a very strong inference which is not in any wise unreasonable that he was an employee; if Thomson had no right to direct or control the details of the work he could have said so without equivocation; if Thomson had no authority to stop the work or order its continuance he could have so testified without equivocation; if the person for whom the service is rendered retains the right to control the manner in which the work is to be performed, and to say whether it shall stop or continue, whether the right is exercised or not, the relationship between the party who performs such work and the person for whom it is performed is ordinarily that of employer and employee.

Thomson testified that Fitzen knew more about digging cesspools then he did and that, in effect, for this reason he left many of the details to the judgment of Fitzen. The fact that the party rendering the service must or may use his own judgment does not itself conclude the question of the relationship as that of principal and independent contractor. Claus v. DeVere, 120 Neb. 812, 235 N.W. 450, 452; Moore v.

Clarke 171 Md. 39, 187 A. 887, 107 A.L.R. 924.

Finally it was urged and the Board held that the work Fitzen was doing was occasional and uncertain as to time, at irregular intervals and could not be anticipated in advance, and hence the employment was casual; such conclusion on the part of the Board necessitated a decision to the effect that the Dairy was not a covered employer.

■ The statute does not exclude the person but the employment from coverage; it excludes casual employment but not necessarily the casual employer. Flynn v. Carson, 42 Idaho 141, 243 P. 818; hence we are not concerned here with the matter of whether Fitzen was or was not steadily employed to dig the cesspool or cesspools.

Here again a determination of the question of casual employment, as a matter of law, must be made upon the particular undisputed facts liberally construed to include employment as covered rather than exclude it. Dillard v. Jones, 58 Idaho 273, 72 P.2d 705; Rabideau v. Cramer, 59 Idaho 154, 81 P.2d 403.

This court has on many occasions had before it for determination the question of whether the employment was casual; it is not necessary to nor do we review and discuss herein these decisions; each case was decided primarily upon the specific facts of the particular case; this case will be likewise decided.

From 1934 to 1949 six cesspools had been dug; in 1949 three additional cesspools were dug; the necessity for the last one if not three additional cesspools arose in 1951; the first six cesspools were dug over a period of some fifteen years with no particular dates of completion shown in the record; it will be observed that the next three that were dug apparently filled up within a period of two years, necessitating the digging of the cesspool in which the injury and death occurred as well as two additional wells if adequate gravel formation was encountered. What relation the increase in volume of business as well as other factors has upon requirements for additional cesspools is not shown in the record but obviously the increase in volume of business would have a direct bearing. It was a usual and common practice to dig such cesspools in a series of three; that is what the dairy expected to do on this occasion if the desired gravel formation was found in the area selected for the first cesspool. Such cesspools were indispensable to carrying on the business, as much so as machinery and equipment for the production, sale and distribution of its products as well as acquiring and building up a dairy herd. While the digging of additional cesspools arose at irregular intervals and was not certain to be necessary on any set dates or within any stated period, hence could not be anticipated as to time, yet on the other hand it was certain that additional cesspools were necessary and were customary and were to.

be and were anticipated with reasonable regularity; this in turn required recurring employment with its hazard a part of the overhead of the business and a usual and expected concomitant of the business, even though those who were engaged to perform the work were not steadily employed for that purpose.

On the authority of Dillard v. Jones, supra, from which this court has not seen fit to depart, we conclude that the employment was not casual.

The order of the Board is reversed and the cause remanded with directions to enter an order awarding compensation. Costs to appellants.

PORTER and KEETON, JJ., concur.

GIVENS, C. J., and TAYLOR, J., dissent.