697 P.2d 1165

**Anthony BURNS, Claimant-Appellant,**

v.

**Herbert NYBERG, Employer, Defendant-Respondent.**

**No. 15456.**

Supreme Court of Idaho.

March 26, 1985.

John W. Gunn, Caldwell, for claimant-appellant.

William F. Gigray, Jr. and R. Scott Pasley, Caldwell, for defendant-respondent.

HUNTLEY, Justice.

Nyberg, who resides in California, hired Burns to manage an apartment unit in Caldwell, Idaho. After several months, Burns suffered a back injury while moving railroad ties in the apartment parking lot. Two months after that Burns was terminated as manager of the apartment, the reasons stated in Nyberg's dismissal letter being that Burns failed to follow prudent maintenance practices; that rent receipts were forwarded late; and that maintenance receipts were not forwarded with the monthly reports. Burns then filed a Worker's Compensation application.

Nyberg resisted the claim, contending that Burns was an independent contractor, not an employee, and that his injury occurred outside the course of his employment.

Before Burns was hired, Nyberg had employed Frank Woomer as manager under written contract. The contract with Woomer recited that Woomer was an independent contractor. When Woomer quit he recommended to Nyberg that Burns succeed him, since Burns had done some work for Woomer while Woomer was manager. Burns and Nyberg had no written agreement, but Nyberg contends that Burns understood and agreed that the terms of the written agreement under which Woomer had worked would also apply to Burns.

Burns' duties involved renting property to tenants when vacancies occurred, collecting rent, performing minor maintenance,

and cleaning the apartments and maintaining the grounds. He was to submit a monthly report to Nyberg showing the amounts collected, funds expended while performing his work, and the total amount remitted to Nyberg. A $200 operating account was established to purchase supplies and pay minor expenses. The account was funded by money retained from rent collections. Burns opened a checking account under the name "Canyon Management Properties" in which he deposited the rent and cleaning deposits he collected from tenants. After rent and deposits were collected, Burns kept any amount due him, and forwarded the balance to Nyberg.

Burns was paid a management fee of 10% of the rent collected, and $5.00 per hour for minor repair and maintenance work. Later, the parties amended their oral agreement to provide that Burns receive free rent instead of a management fee.

Burns made recommendations to Nyberg for improvements to the apartments. He did not have authority to make major improvements on the property, but did have authority to decide whether a tenant's cleaning deposit could be refunded. He also could purchase inexpensive supplies used to clean or repair the apartments. Burns could and did hire other individuals to perform work at the apartment complex.

No provisions were made for withholding from payments to Burns for taxes, social security, or other withholding.

The parties stipulated that the scope of the hearing before the Industrial Commission would be limited to whether or not Nyberg was a covered employer under the Worker's Compensation Law. If it were decided he was an employer, further testimony and/or depositions would be given as to the extent of injuries of claimant. The Commission concluded that Burns failed to establish that Nyberg had, or assumed, the right to control the claimant with respect to the time, manner and method of executing his work; or to direct his activities, or to control the details of the work and determine how it should be performed. The

Commission therefore concluded that Burns had failed to establish he was defendant's employee at the time of the accident, and that he was therefore not entitled to recover Worker's Compensation benefits. We affirm.

The determination of whether an injured party is an independent contractor or an employee is a factual determination which must be made from all the facts and circumstances established by the evidence. *Ledesma v. Bergeson,* 99 Idaho 555, 585 P.2d 965 (1978). The Industrial Commission's factual findings will not be overturned on appeal when they are supported by substantial and competent evidence. *Nelson v. Pumnea,* 106 Idaho 48, 675 P.2d 27 (1983); *Green v. Columbia Foods,* 104 Idaho 204, 657 P.2d 1072 (1983).

Burns argues on appeal that while the facts before the Commission were undisputed, the Industrial Commission misapplied the law to the facts, and its order should therefore be set aside. We do not agree. The Industrial Commission had before it substantial and competent evidence to conclude that Burns was an independent contractor. For example, the manner in which Burns established the operating account under an assumed business name is indicative of independent contractor status. Further, Burns could and did hire others to work at the apartments. The right to hire, furnish, control, discharge and pay assistants, although not conclusive, indicates independent contractor status. *Merrill v. Duffy Reed Construction Company,* 82 Idaho 410, 353 P.2d 657 (1960). The fact that no provision was made for withholding taxes, social security or other withholding further points toward independent contractor status. The evidence also substantiated the Referee's finding that Nyberg did not issue any specific directions to or controls upon Burns with regard to the manner, means and method of performing the details of his work. Nyberg was actually interested only in the ultimate result—that rent be collected and forwarded in a timely manner, and that necessary maintenance and repairs be performed. Nyberg was an

absentee owner who had little contact with Burns.

■ The primary test in Idaho is whether a contract gives, or the employer assumes, the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract. *Ledesma v. Bergeson, supra.* Under this test the Commission's finding that claimant was an independent contractor was supported by the evidence.

■ Finally, the Referee found, and the evidence showed, that Nyberg terminated his relationship with Burns because he was dissatisfied with the results of Burns' efforts. In the *Ledesma* case this Court stated that only where either party had the right to terminate a relationship at will and without liability would evidence reflecting such a relationship be indicative of an employer-employee relationship. *Id.* 99 Idaho at 559, 585 P.2d 965. Nyberg did not exercise a right to terminate at will; rather he terminated his agreement with Burns based on legitimate grounds for dissatisfaction which he stated in his termination letter.

■ Burns also argues that admission of the written agreement between Nyberg and Woomer was irrelevant and prejudicial to Burns. On the contrary, the evidence showed that the written agreement outlined the manager's duties, and that Nyberg understood that Burns was familiar with the terms of the agreement because he had worked for Woomer, and because Woomer suggested Burns be hired.

Affirmed.

Costs to respondents. No attorney fees.

DONALDSON, C.J., and SHEPARD and BAKES, J.J., concur.

BISTLINE, Justice, dissenting.

I am compelled to write because of the oppressive result as well as the majority's flagrant disregard for the purpose and policy behind Idaho's Worker's Compensation Law, I.C. § 72–101 *et seq.* The majority today ignores the fundamental premise of our Worker's Compensation Act: the law must be given a liberal construction in favor of the relationship of employer and employee. *Fitzen v. Cream Top Dairy,* 73 Idaho 210, 249 P.2d 806 (1952). If any doubt exists whether an individual is an employee or an independent contractor, *Fitzer* requires resolution in favor of the employee. *Fitzer, supra,* at 214, 249 P.2d 806. Unfortunately, the majority today has flipped this rule of construction on its head by going out of its way to accept that Mr. Burns was an independent contractor and not an employee of Mr. Nyberg. The injustice done to Idaho's Worker's Compensation law is surpassed only by the injustice to Mr. Burns.

Appellant did not challenge the Commission's decision by questioning whether that decision was supported by substantial and competent evidence; rather, the appellant contended that the Commission applied incorrect law to the facts, resulting in an incorrect decision. In this regard, the majority's cursory review of this case is regretful inasmuch as it overlooks some very important policies of the Worker's Compensation law.

Probably the most serious problem which the majority failed to address is found in the Commission's conclusions of law.[1] After setting forth the correct rule of law, that when there is doubt whether a worker is an employee or independent contractor the law must be given a liberal construction, the Commission ignores this directive, and without any authority, blithely states: "The [Commission] therefore concludes that the claimant has the burden of proving facts sufficient to show by preponderance of the evidence that he was an employee at the time of the alleged accident." I believe this is clearly an error by the Commission, and that we should hold, as a matter of

---

1. Because the Commission adopted in full the findings and conclusions of the referee, we refer only to the Commission.

law, that the claimant does not have the burden of proving facts sufficient to show by a preponderance of the evidence that he was an employee at the time in question. This rule would be more in line with the liberal construction of the Worker's Compensation law favoring eliminating doubts in favor of the employer-employee relationship. Although I believe the burden should fall on the worker to demonstrate the existence of an employment relationship, once this is done any doubt regarding the nature of the employment relationship should be resolved in favor of the worker being an employee rather than an independent contractor. The liberal purpose of the Worker's Compensation law dictates that ambiguities be resolved in favor of the injured worker receiving coverage under the act. To do otherwise violates the spirit and intent of the law.

I am also persuaded by the arguments set forth in Larson, *Workmen's Compensation Law*, § 44.31, wherein it is argued that the factors considered to decide employment status are not to be weighed equally:

> The four factors treated in this subsection—direct evidence of right or exercise of control, method of payment, furnishing of equipment and right to fire—are well-established tests resorted to in almost every case. The present analysis, however, in line with the object of this chapter to achieve some degree of definiteness in the application of these tests, differs in one important respect from the usual statement of the effect of these factors. It is commonly assumed that these tests work with equal force in both directions; that is, that in each instance, evidence of an employment-type arrangement is persuasive of the employee status, while contrary evidence is persuasive of independent contractorship. For example, it is often said that payment by the hour is indicative of employment, while payment by the piece or job is indicative of independent contractorship; and that furnishing of equipment by the employer is evidence of employment, while furnishing of equipment by

the worker is evidence of independent contractorship. The following discussion will, it is hoped, remove at least half of the vagueness in this use of these tests by showing that, for the most part, any single factor is not merely indicative of, but, in practice, virtually proof of, the employment relation; while, in the opposite direction, contrary evidence is as to any one fact at best only mildly persuasive evidence of contractorship, and sometimes is of almost no such force at all. Independent contractorship, then, is established usually only by a convincing accumulation of these and other tests, while employment, although a similar accumulation is often attempted, can if necessary often be solidly proved on the strength of one of the four items that follow.

The ultimate result of Larson's analysis is that any doubts should be resolved in favor of finding the worker is an employee, not an independent contractor. Clearly, Larson tips the scale in favor of employees, which I believe is the correct posture if one is to follow the liberal construction required under Idaho's Worker's Compensation law.

In the instant case, the nature of the employment relationship is ambiguous at best. The majority state that the primary test distinguishing employees from independent contractors is based upon the right to control the time, manner and method of executing the work as opposed to the right to require certain specific results. The majority concludes the Commission's decision that Mr. Nyberg had only the right to require a result is supported by substantial and competent evidence. But, I maintain that the facts are ambiguous regarding which right Mr. Nyberg actually had. Most importantly, the Commission, and this Court, are required to focus on the rights of the employer, not how or whether he exercised those rights. Larson, *Workmen's Compensation Law*, § 43.10 *et seq.* Hence, if an employer had the right to control the details of the work, it matters not that he never exercised that right and

never actually controlled the details; what is important is that he had the *right* to control the time, manner and method of executing the work.

In the record before us, there is conflicting evidence regarding which right Mr. Nyberg had. The record shows that he limited Mr. Burns' purchasing power to $200 for small repairs and cleaning equipment for the apartment complex. Moreover, Burns was required to contact Nyberg for approval for major repairs of the building (electrical, plumbing, or construction work). And, Burns was required to send a monthly report to Nyberg listing income and expenses. Under these circumstances, Nyberg certainly was exercising control over time, manner, and method of executing the work.

The majority correctly notes that Burns could, and did, hire others and that the right to hire, furnish, control, discharge and pay assistants suggests independent contractor status, although it is not conclusive. However, the record demonstrates that the hiring done by Burns was at best casual—he "hired" his two nephews to rake the lawn and paid them $2.00 each, and hired another individual who he paid $10.00 to pull weeds around the apartment. This is hardly the type of hiring which comes to mind in association with an independent contractor.

Nor am I persuaded by the majority's conclusionary statement that "no provision was made for withholding taxes, social security or other withholding [which] further points toward independent contractor status." Failure to withhold the appropriate amounts may suggest that the worker is an independent contractor, or it equally may suggest that the employer is refusing to or failing to comply with the withholding requirements of state and federal law. In the later case, the failure to withhold is totally irrelevant and unpersuasive regarding the nature of the employment relationship, and should not be considered by the Commission or by this Court in deciding if a worker is an employee or an independent contractor.

Far better, I believe, that the majority go beyond the judicial platitudes so frequently announced by this Court and examine the excellent analysis set forth in Larson, *Workmen's Compensation Law*, § 43.50, wherein Larson suggests that, because the purpose of worker's compensation laws is compensatory, the "control of the details" test should be replaced by a "relative-nature-of-the-work" test. Larson describes the test with the following language:

> This test, then, which for brevity will be called the "relative nature of the work" test, contains these ingredients: the character of the claimant's work or business—how skilled it is, how much of a separate calling or enterprise it is, to what extent it may be expected to carry its own accident burden and so on—and its relation to the employer's business, that is, how much it is a regular part of the employer's regular work, whether it is continuous or intermittent, and whether the duration is sufficient to amount to the hiring of continuing services as distinguished from contracting for the completion of a particular job.

Larson, *Workmen's Compensation Law*, § 43.52.

In his analysis of the trend toward use of the "nature of the work" test and away from the "control" test, Larson cites a New York Court of Appeals decision on insurance salesmen, *Gordon v. New York Life Ins. Co.*, 300 N.Y. 652, 90 N.E.2d 898 (1950), *see* Larson, *supra*, at § 43.54, which I find not only persuasive, but believe should be embraced by this Court. In *Gordon*, although every fact relating to control was overwhelmingly on the side of independent contractorship, the New York Court of Appeals determined the saleswoman was an employee. Larson, *supra*, at § 43.54 contends there is only one way to explain this decision:

> The only explanation is that the control test has been unconsciously jettisoned as the primary consideration. In its place is the court's unexpressed conviction that the company was getting its basic business accomplished through this employ-

ee. The employee was not in an independent business as a general insurance broker might be. She was in continuous service rather than on a single project. She was not in the kind of business where she might be expected to provide her own protection against injury. In short, she meets every "nature of the work" test, and not a single "control" test; and the court without accounting for the result in these terms does in fact reach the most appropriate result so far as compensation theory is concerned.

Applying these factors to the case before us compels only one result: Burns was an employee, not an independent contractor. Clearly, Nyberg was getting his basic business regarding the apartment complex accomplished through Burns' management of the apartments; Burns did not hold himself out to be an apartment management service or business, but rather worked *only* for Nyberg in that capacity; he was not in the kind of business where he might be expected to provide his own protection against injury; and, the employment relationship was of a continuous nature. Nyberg wanted someone to manage and maintain the apartment complex—he did not hire Burns for a specific result, but rather he hired him to continuously oversee the daily operation of Nyberg's business. Unfortunately, the majority has heedlessly passed over the insightful analysis of Larson, *supra,* regarding the "nature of the work" test versus the "control" test. In sum, it is inescapable that Burns was naught but a hired agent who also was expected to do some physical work.

Finally, the majority contends that the written agreement between Nyberg and Woomer, Burns' predecessor, was neither irrelevant nor prejudicial to Burns. The majority suggests that this evidence showed that Burns understood his status as an independent contractor. The majority cites no authority for this novel proposition of law, i.e., that one can be held to know the contents of an agreement between one's boss and one's predecessor and accordingly be collaterally bound by the agreement contained therein. Even the

most sophisticated legal minds may well be mystified by such a proposition; at least this unsophisticated writer fails to find any sound legal basis for this incredible holding.

A serious concern is that the Court today, ignoring the liberal purpose and intent of the Worker's Compensation law, will be seen as turning in a direction not envisioned by the drafters of law. Clearly, an employment relationship existed between Mr. Burns and Mr. Nyberg. The nature of that relationship, not carefully delineated by the parties, must be characterized at best as ambiguous. Under these circumstances, any doubt should be reconciled in favor of finding the claimant was an employee.