712 P.2d 570

**Martha Frances BURDICK, Claimant-Respondent,**

v.

**Larry THORNTON, dba T–5 Quarter Horses, Defendant-Appellant.**

**No. 15851.**

Supreme Court of Idaho.

Dec. 13, 1985.

James P. Speck, Ketchum, for defendant-appellant.

John E. Sutton, James M. Kinsela, Boise, for claimant-respondent.

SHEPARD, Justice.

This is an appeal, pursuant to I.A.R. 12(b), from a decision by the Industrial Commission that claimant-respondent Martha Burdick was an employee of defendant-appellant Larry Thornton, dba T–5 Quarter Horses, rather than an independent contractor. We affirm this interlocutory decision of the Commission and remand this case for further proceedings to determine the extent of workmen's compensation benefits to which claimant is entitled.

Burdick came to work for T–5 Quarter Horses as a horse trainer soon after her graduation from a Wyoming college with a degree in equestrian science. T–5 Quarter Horses is a sideline business owned by Larry and Wende Thornton for the purpose of raising and training quarter horses on their ranch near Bellevue.

The parties had no written employment agreement. It is undisputed that the par-ties verbally agreed that Burdick would receive a monthly salary of $650.00, payable in two installments of $325.00, as well as rent-free use of an apartment on the premises.

No provisions were made for withholding payments from claimant's salary for taxes, social security, or insurance. According to the Thorntons, they discussed taxes, workmen's compensation insurance and health and accident insurance with claimant and claimant indicated she would be responsible for her own taxes and insurance, and wanted no deductions taken from her salary. According to claimant, she had no recollection of any such conversation, but when she received her first pay check she was told that she would be responsible for her own taxes.

The parties agreed that the claimant would train horses five days per week and that claimant could pick the two days per week she wished not to work. The actual training routine and the hours of the day that claimant would train horses were dictated by the weather and claimant's professional judgment as a horse trainer. Claimant was also responsible for giving riding lessons to Mrs. Thornton on an irregular basis. In one instance when the Thorntons were on vacation, the claimant received specific instructions concerning the breeding of a particular mare and in fact bred the mare. On another occasion claimant attended a sale on behalf of T–5 to sell some of Thorntons' horses according to specific instructions. Claimant also purchased a mare for T–5.

On August 2, 1982, Burdick was injured while training one of the T–5 horses. The Thorntons declared the accident on their homeowners insurance in order to help Burdick with her medical bills, as she had not obtained any medical insurance. Burdick resumed work at T–5 and continued until April 1983, when she quit her job and moved to California.

In July 1983, Burdick submitted a claim to the Industrial Commission for workmen's compensation benefits allegedly ow-

ing for the August 1982 accident. A hearing was held before the Industrial Commission on the sole issue of whether the claimant was an employee of T–5 Quarter Horses, or an independent contractor.

The Commission determined that claimant was an employee of T–5, focusing on the fact that while Thorntons exercised no control over claimant's horse-training activities, they retained direct control over a number of other activities and duties claimant became involved in to further T–5 business. The Commission concluded that:

"... [T]he strongest fact in favor of a determination that Claimant is an independent contractor is her expertise as a horse trainer and the unequivocal evidence that Defendants made no attempt to interfere with her independent judgment in that area. In all other respects, however, Claimant was treated as an employee, was expected to, and did participate in various other phases of the overall business of Defendants."

The Commission issued certification for appeal to this Court on the ground that the case involved a controlling question of law, "because resolution of the issue may preclude the necessity of further proceedings" before the Commission. The issue on appeal is whether substantial and competent evidence supports the Industrial Commission's determination that claimant was an employee of the defendant at the time of her accident.

■ The determination of whether an injured party is an independent contractor or an employee is a factual determination to be made from full consideration of the facts and circumstances established by the evidence. *Burns v. Nyberg*, 108 Idaho 151, 697 P.2d 1165 (1985) (Bistline, J., dissenting), *quoting Ledesma v. Bergeson*, 99 Idaho 555, 585 P.2d 965 (1978). The Commission's factual findings will not be disturbed by this Court when they are supported by substantial and competent evidence. *Burns, supra* (citations omitted); *see also* I.C. § 72–732.

■ The ultimate question in finding an employment relationship is whether the employer assumes the right to control the time, manner and method of executing the work of the employee, as distinguished from the right merely to require certain definite results in conformity with their agreement. *Ledesma v. Bergeson*, 99 Idaho at 558, 585 P.2d at 968; *see also* I.C. § 72–102(9), (13). Four factors are traditionally used in determining whether a "right to control" exists, including, (1) direct evidence of the right; (2) the method of payment; (3) furnishing major items of equipment; and (4) the right to terminate the employment relationship at will and without liability.

■ We note that evidence in this case was conflicting and that circumstances surrounding this relationship could easily be argued as establishing an .employment or independent contractor relationship. However, when a doubt exists as to whether an individual is an employee or an independent contractor under the Workmen's Compensation Act, the Act must be given a liberal construction in favor of finding the relationship of employer and employee. *Fitzen v. Cream Top Dairy*, 73 Idaho 210, 249 P.2d 806 (1952). With this rule of construction in mind, we affirm the Commission's determination that the relationship in this case was that of employer-employee. We agree with the Commission that the record, taken as a whole, provides sufficient indicia that the Thorntons retained a right to control claimant to establish an employer-employee relationship under workmen's compensation law.

The Commission found that Thorntons exerted no direct control over claimant's primary job of training horses. The evidence established that claimant was hired as a professional horse trainer because the Thorntons had insufficient experience, education and time to properly train the horses. The Thorntons made no attempt to interfere with Burdick's independent judgment in that area.

The Commission did find evidence of Thorntons' direct control over a number of

other activities which Burdick engaged in to further T–5's business. For example, claimant received specific instructions on the breeding of a mare and on the sale price to be obtained for certain horses the claimant transported to a sale in Oregon. In addition, one of claimant's secondary duties was to provide riding lessons to Mrs. Thornton. The lessons were given depending upon Mrs." Thornton's schedule and availability. Defendant T–5 argues that these limited, secondary duties performed by the claimant for the Thorntons, do not constitute substantial, competent evidence to support a finding that claimant was an employee for the entire time and scope of her work for the defendant. Defendant T–5 argues that minor, isolated and nonrecurrent activities performed during a working relationship should not convert an independent contractor into an employee.

■ It is difficult to characterize Burdick's situation as either one of continuous service and supervision, or as one of producing only the ultimate result of trained horses. While claimant's professional training is a factor indicative of independent contractorship, her actual duties expanded to include other activities, the nature of which indicates employee status. The one-time incidents of receiving specific instructions on the breeding of a particular mare, and transporting horses to a sale, standing alone, do not necessarily indicate a deviation from independent contractor status. However, when coupled with the evidence that claimant began participating in decisions about breeding and the general direction of the business, and that Thorntons required the claimant to train outside horses or give riding lessons at their horse-training arena, and billed these additional activities on behalf of claimant through the business entity, they support the Commission's finding of evidence of direct control, indicative of employee status.

The Commission found that the claimant's monthly salary, *by itself,* was a neutral factor in determining whether or not Thorntons retained a right to control. This was because claimant was paid on a month-ly basis, but there was evidence that the monthly rate was based upon an approximation of the number of horses claimant was expected to train.

The Commission found that the salary, when coupled with the evidence that claimant's outside activities of giving lessons and training horses of individuals not associated with T–5 were required to be performed in the T–5 arena and billed through T–5, militated toward a conclusion that claimant was an employee. Contrary to T–5's assertion, the Commission did not merely rely on the "neutral manner of payment," but coupled the neutral factor of monthly salary with evidence of defendant's control over billing and payment for her extracurricular activities.

T–5 argues that the Commission should have considered as evidence of an independent contractor relationship the express agreement between the claimant and the Thorntons that she wanted no deductions taken from her salary and that she would be responsible for her own taxes and insurance. In its findings of fact, the Commission stated that "[b]ased upon claimant's equivocal statements, the Commission resolves the conflict in evidence in favor of Defendants and finds that claimant agreed that she wanted no deductions from her salary and that she would be responsible for her own taxes and insurance." This Court has indicated that the failure to make provisions for withholding taxes, social security, etc., from payment, points toward independent contractorship. *Burns v. Nyberg,* 108 Idaho 151, 697 P.2d 1165 (1985).

Although the Commission's finding as to the existence of this agreement is not explicitly discussed in the conclusions of law, there is no indication that the Commission did not consider this evidence in its decision. The Commission does note in its conclusions of law that any agreement between the parties is not necessarily determinative of the nature of the relationship between them. Where other factors indicate the existence of a right to control, the Court will refuse to be bound by such an

agreement. *See Beutler v. MacGregor Triangle Co.*, 85 Idaho 415, 380 P.2d 1 (1963). No such agreement can constitute a waiver by an employee of any rights he might otherwise have under the workmen's compensation law. I.C. § 72–318.

T–5 also takes issue with the Commission's conclusions with regard to the furnishing of equipment in the "right to control" determination. The Commission found that the fact that claimant borrowed minor items of equipment from T–5 to perform her training duties did not constitute a "furnishing of equipment" sufficient to display T–5's retention of the right to control. The Commission then looked at the horse-training arena the Thorntons were building, which the claimant used in her training activities. The Commission concluded:

> "Although not literally an item of equipment, the arena certainly represents a significant financial investment of Defendants designed to provide a facility for the training of horses. The fact that this significant investment was provided by Defendants, rather than by Claimant, tends to suggest a right to control and, thus, an employer-employee relationship."

T–5 argues that this finding conflicts with *Ross v. Fiest*, 105 Idaho 119, 666 P.2d 646 (1983), wherein this Court held that an alleged employer's timber cutting rights were not analogous to the ownership of major items of equipment used to do the work the claimant was involved in. The Court stated that:

> "Every principal contractor necessarily extends to a subcontractor the right to do work on the involved premises, and the principal does not thereby necessarily change the status of a subcontractor to the status of an employee." *Id.* at 120, 666 P.2d at 647.

We hold that the Commission's finding does conflict with *Ross.* We further hold, however, that there is enough evidence, aside from the financial investment in the arena, to establish right to control and thus an employment relationship in this case.

The Commission found that the evidence regarding the right to terminate the employment relationship at will and without liability was inconclusive. Claimant testified that she thought the Thorntons could have fired her at any time and that she would have no recourse against them in that event. Mr. Thornton testified that he did not believe that he could have terminated claimant's employment at will without any reason, but could only terminate her if she was not progressing with the horses.

Two of the four "right to control" factors, direct evidence of the right, and method of payment, are applicable here. It is not clear that these two factors point only in the direction of either employee or independent contractor. The Court was faced with a similar situation in *Taylor v. Blackwell Lumber Co.*, 37 Idaho 707, 218 Pac. 356 (1923). The Court there stated:

> "Whether one is in the employ of another or is an independent contractor is to be determined from all the facts and circumstances established by the evidence. The evidence in the case at bar was conflicting, and reasonable minds might draw different conclusions therefrom. However, it was the duty of the industrial accident board to determine the ultimate fact, whether Taylor was an employee or an independent contractor, and, in view of the conflict of evidence and the fact that there is substantial evidence to sustain the findings of the board, this court will not disturb them." *Id.* at 721, 218 Pac. at 360 (citations omitted).

There is substantial, competent evidence to support the determination of the Commission of an employer-employee relationship in this case, and the decision of the Commission will not be disturbed.

The decision of the Industrial Commission is *affirmed.* The case is remanded for further proceedings to determine the amount of workmen's compensation benefits, if any, due to claimant. Costs to respondent. No attorney fees on appeal.

BISTLINE and HUNTLEY, JJ., concur.

874

BAKES, Justice, dissenting:

The majority acknowledges that the Industrial Commission erred in finding that the Thorntons' investment in the horse training arena suggests an employer-employee relationship. As we stated in *Ross v. Fiest*, 105 Idaho 119, 666 P.2d 646 (1983), "Every principal contractor necessarily extends to a subcontractor the right to do work on the involved premises, and the principal does not thereby necessarily change the status of a subcontractor to the status of an employee." *Id.* at 120, 666 P.2d at 647. After recognizing the commission's error, the majority goes on to state that "there is enough evidence, aside from the financial investment in the arena, to establish right to control and thus an employment relationship in this case." Therein I believe the majority errs.

In *Ross v. Fiest, supra,* this Court clearly stated, "When erroneous evidence is considered in arriving at a factual decision, particularly where the ultimate factual issue is as close as the issue in this case, the cause should be remanded to the factfinder to reconsider the factual issue without the erroneous evidence." 105 Idaho at 120, 666 P.2d at 647. *See also, Merrill v. Duffy Reed Construction Co.,* 82 Idaho 410, 419, 353 P.2d 657, 662 (1960). Therefore, even if the majority is correct in its conclusion that "there is enough evidence, aside from the financial investment in the arena, to establish right to control and thus an employment relationship in this case," it is not for this Court, an appellate body, to weigh the evidence. Rather, this matter should be reversed and remanded to the Industrial Commission, "to reconsider the factual issue without the erroneous evidence," *Ross v. Fiest, supra,* 105 Idaho at 120, 666 P.2d at 647.

On a separate issue the majority states, as did the Industrial Commission in its conclusions of law, that an agreement between the parties is not necessarily determinative of the nature of the relationship between the parties. Both the majority and the commission rely on *Beutler v. MacGregor Triangle Co.,* 85 Idaho 415, 380 P.2d 1 (1963), to support this proposition. Upon careful reading, however, *Beutler* stands only for the proposition that the mere characterization of a person as an "independent contractor" in an employment contract does not conclusively indicate that the party is an independent contractor. The remaining provisions in the contract must be evaluated to determine what the true nature of the arrangement is. The Court in *Beutler* made several references to the other contract terms as "indicia" of the nature of the relationship between Beutler and MacGregor Triangle Co. *See Beutler v. MacGregor Triangle Co.,* 85 Idaho at 420–421, 380 P.2d at 4. The Court's consideration of the other terms of the contract as indicia of the nature of the parties' relationship is consistent with other case law. *See Merrill v. Duffy Reed Construction Co.,* 82 Idaho 410, 353 P.2d 657 (1960); *Wilcox v. Swing,* 71 Idaho 301, 230 P.2d 995 (1951).

A fair reading of the record before us indicates that in this case the Industrial Commission failed to properly consider the terms of the agreement executed between the parties. I am unable to see how the commission could rule as to the nature of the parties' relationship here without a full consideration of the terms of their agreement. It is well established that the question whether the relationship is that of employer-employee or contracting principal and independent contractor, is a question of the parties' intent, which is to be determined from all the facts and circumstances established by the evidence. *Merrill v. Duffy Reed Construction Co.,* 82 Idaho at 419, 353 P.2d at 662; *Hansen v. Rainbow Mining & Milling Co.,* 52 Idaho 543, 547, 17 P.2d 335, 337 (1932). Clearly, the terms of the parties' contract, while not conclusive, represent the most important evidence to be considered in determining the intent of the parties. This becomes particularly obvious when one carefully considers the right to control test used to determine whether an individual is an independent contractor. The right to control test requires an examination of whether *the contract gives,* or the employer assumes, the right to control the time, manner and meth-

od of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract. *Ledesma v. Bergeson,* 99 Idaho 555, 558, 585 P.2d 965, 968 (1978). Thus, while other evidence is to be considered in determining whether the employer has assumed the right to control, it is *the contract* between the parties which is the starting point for a determination of the parties' intent and the basic relationship between them.

In this case, the commission's only reference to the parties' contract was their passing comment that under the *Beutler* case the agreement was not necessarily determinative, nor were they bound by it. I believe that statement by the commission reflects a basic evidentiary misunderstanding of the important role which the agreement between the parties plays in a determination of whether or not the relationship is employer-employee or principal and independent contractor. In this case, important probative evidence on this issue was contained in the parties' agreement, which I believe the commission neglected to consider. That fact, coupled with the commission's erroneous evaluation of the Thorntons' investment in the horse training arena as evidence suggesting an employment relationship requires that this case be remanded to the Industrial Commission for reconsideration. On reconsideration, the commission (1) should not consider the owners' investment in the arena as evidence of an employer-employee relationship, and (2) should consider the agreement between the parties as the most important, albeit not conclusive, evidence in determining whether the parties' arrangement was an employer-employee relationship, or a principal-independent contractor relationship.

I would reverse and remand for a new determination free from the errors described above.

DONALDSON, C.J., concurs.